ANDERSON R. GALUTIA v. LAURA B. GALUTIA.

No. 14,275.   (82 Pac. 461.)

SYLLABUS BY THE COURT.

DIVORCE—*Permanent Alimony—Custody of the Children.* The wife was granted a decree of divorce for the fault of the husband, and was given the custody of two young children. The court awarded her a farm of 100 acres, worth $2000, subject to an encumbrance of $300 and some back taxes. She had assisted in accumulating most of the property. The husband was given the custody of a son aged fifteen years, capable of assisting him in his work as a coal-miner, and was awarded a house worth $80; also, some other property of small value. Upon review this court cannot say from the evidence that the award to the wife was not just and reasonable.

Error from Lyon district court; DENNIS MADDEN, judge. Opinion filed October 7, 1905. Affirmed.

*McLaughlin & Messerly,* for plaintiff in error.

*H. B. Hughbanks,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The plaintiff in error appeals from the judgment of the district court of Lyon county in awarding permanent alimony. Laura B. Galutia brought suit against Anderson R. Galutia for divorce, permanent alimony, and the custody of three minor children. The grounds for divorce alleged were extreme and repeated cruelty, gross neglect of duty, and habitual drunkenness. In November, 1903, the court granted her a decree of divorce, and awarded her the custody of two children, a girl aged seven and a boy aged two. She was awarded as permanent alimony the title in fee to a farm of 100 acres of land in Lyon county, worth $2000, with an encumbrance of $300, two years' back taxes, and a two-year lease. The husband was awarded a small house which he owned, located on rented land two miles from Osage City, and

worth $80.  With the exception of some personal prop-
erty of little value, consisting of household furniture
and some farming implements, and a "coal-drift" which
he operated upon leased land, he owned nothing.  He
was awarded the custody of the son aged fifteen years.

The single error assigned is that the allowance to the
wife was "unjust, unreasonable, inequitable, and excess-
ive."  We agree with counsel that no rule has been
laid down by this court by which it can be determined
what would be excessive alimony in any case, although
the question has been before this court a number of
times.  (*Snodgrass v. Snodgrass,* 40 Kan. 494, 20 Pac.
203; *Leach v. Leach,* 46 Kan. 724, 27 Pac. 131; *Neddo v.
Neddo,* 56 Kan. 507, 44 Pac. 1; *Johnson v. Johnson,* 66
Kan. 546, 72 Pac. 267.)

Counsel argue that from the language of these cases
"it can be pretty well determined what the boundary-
line is between excessive and reasonable alimony in *any
case,*" and think the rule should be laid down that the
wife in no case should be awarded more than one-half
of the husband's property, "unless the conduct of the
husband had been so outrageous as would justify the
award of a larger amount in the nature of a penalty."
Counsel thus find it difficult to lay down a hard-and-
fast rule which shall govern in all cases.  Circum-
stances would justify an exception even to their own
rule.  Courts have experienced, and probably always
will experience, a like difficulty, because it is manifest
that each case must depend upon its own peculiar facts.
(*Johnson v. Johnson,* 66 Kan. 546.)

In the case at bar the husband was by occupation
a coal-miner, and earned about two dollars per day.
The wife was not robust physically.  During the time
they lived upon the farm in question the testimony
shows that to the extent of her ability she performed
the labor of a man in the field.  While the husband
had purchased this farm before the marriage, it was
only partly paid for, and during the marriage the sum
of $300 additional was paid, presumably by their joint

efforts. The place cost $750, of which he had paid prior to the marriage $150. There is yet due on the purchase-price $300, which the wife must assume. For a time the husband engaged in keeping a restaurant in Osage City, and the wife helped with her work in carrying on the business. It appears that during the winter the wife was compelled to carry coal a distance of a quarter of a mile in all kinds of weather, and that she was poorly clad. The financial circumstances of the husband were hardly such as to warrant him in furnishing her many luxuries, but the evidence shows he spent a considerable portion of his earnings and much of his time patronizing a "joint," and left his family without some of the necessaries; that very frequently he took the little girl, aged seven, with him to town and allowed her to accompany him to the "joint," where he would remain for hours at a time, and often did not return with her to the home until very late at night—in some instances as late as two o'clock in the morning.

The court below awarded him the custody of the son Carl, aged fifteen years, and the suggestion is made by counsel that in giving the farm to the wife an injustice has been done to this boy. The evidence shows that the boy worked with his father in the mines, and presumably at the time the decree was granted was able to be of some considerable assistance to his father, and to earn his own living. Besides, this court cannot presume that it will not be to his advantage rather than to his detriment that his mother be allowed this land. In all probability his interests will be protected better than if it were divided, notwithstanding the fact that for the present the court awarded his custody to the father.

Section 5139 of the General Statutes of 1901, being section 646 of the code, requires that the award shall be just and reasonable. There are many circumstances which properly enter into the mind of the court when making such an award, such as the finan-

cial ability of the parties, how the property was accumulated, the conduct of the parties, their station in life, and the question of the custody and maintenance of children. It is presumed that the court below considered all these circumstances, together with all the evidence.

Under the circumstances of this case we cannot say that the award was not just and reasonable. As was said in *Snodgrass v. Snodgrass*, 40 Kan. 494, the court below "has had an opportunity of seeing the parties and the witnesses, and of hearing all the testimony orally, and has therefore had a better opportunity of knowing what would be exact justice between the parties than we have." The judgment is affirmed.

All the Justices concurring.