## TOBIN v. TOBIN.

No. 13835—Opinion Filed March 13, 1923.

(Syllabus.)

### 1. Divorce—Division of Jointly Acquired Property.

Jointly acquired property, within the meaning of section 4969, Rev. Laws 1910, is that accumulated by the joint industry of the husband and wife during the marriage, and if a divorce is granted to either, an equitable division thereof should be made.

### 2. Divorce—Division of Property—Statutes.

Section 4969, Rev. Laws 1910, is separable into three divisions; the first of such divisions controls where the decree is granted the wife on account of the fault of the husband, and is:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name, if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage, or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or installments, as the court may deem just and equitable."

The second controls as to the jointly acquired property, and is applicable when the decree is granted either the husband or the wife, and reads:

"As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof."

The third subdivision is applicable where the decree is granted the husband on account of the fault of the wife, and is:

"In case of the finding by the court that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

### 3. Same—Jointly Acquired Property—Alimony.

A court of equity, on granting a divorce to either the husband or wife, is required by subdivision 2, as herein divided, of section 4969, Rev. Laws 1910, to make a just, fair, and equitable division of the properties acquired by the parties jointly during their marriage. In doing so, the court is not required to divide the property equally between the parties, but is given a wide latitude in determining just what part of the jointly accumulated properties shall be given to each of the parties.

Subdivision 1 of section 4969, Rev. Laws 1910, authorizes the court, on granting a divorce to the wife on account of the fault of the husband, to allow her alimony. An allowance made by the court for the maintenance of the wife, whether pending her suit for divorce, or after the divorce decree is entered in her favor, out of the separate property of the husband, is alimony, whether it reaches the wife in the form of money, or in the form of property, carved out of the property estate of the offending husband.

### 4. Same—Equitable Division—Consideration of Property Previously Received by One Party.

In disposing of the jointly acquired properties of the parties during marriage, the court can take into consideration that part of the property, if any, already received by one through voluntary conveyance of the other and where it appears that the party complaining has received from the other jointly acquired property of such an amount as if set aside by order in the divorce decree would be a fair, just, and equitable division of the accumulated properties, this court will presume that the trial court in entering judgment took that into consideration, and there is nothing in the decree making a specific division of the remaining jointly acquired property, it will be presumed that subdivision 2 herein set out was followed by the court, and the properties already received by the complainant were considered the equitable share of such party.

**5. Divorce—Custody of Children.**

In granting a divorce, where the custody of minor children is involved, it is the duty of the trial court in the the final decree to make such provision for them as will best meet their needs, not only of maintenance, but of educational, social, and religious opportunities. When it appears that this duty, under all circumstances, has been done to their best advantage, this court will not reverse the decree as to them, though it may seem harsh, but it may subsequently be modified, if the conduct and situation of the parent warrants it.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Will J. Tobin against Mary C. Tobin for divorce. Judgment for plaintiff, and from the decree affecting the division of property and custody of the children, defendant brings error. Affirmed.

Harris, Spielman & Harris and George Giddings, for plaintiff in error.

Selby & Callihan, for defendant in error.

BRANSON, J. The plaintiff in error in this court was the defendant, and the defendant in error in this court was the plaintiff, in the district court, and they will be referred to herein as they appeared in the court below.

The plaintiff, Will J. Tobin, sued his wife, the defendant, Mary C. Tobin, for an absolute decree of divorce and custody of their three minor children, John Tobin, age 15, Sylvan Tobin, age 12, and Redempta Tobin, age five, and setting aside to him the home, described as lot two (2), block one (1), Winan's Second Addition to the city of Oklahoma City, and certain items of personal property described in the petition. Plaintiff pleaded that he was entitled to a divorce on the ground of extreme cruelty and gross neglect of duty, specifying the acts constituting the same.

The defendant in her answer denied plaintiff's allegations, and by way of cross-petition alleged that the plaintiff had been guilty of extreme cruelty towards her, and on that ground asked that she be given a decree of divorce, and that the property described in plaintiff's petition be set apart to herself.

On the trial of the cause, the plaintiff and the defendant each produced a large number of witnesses. The testimony given by them covers more than 300 pages of the record. The court entered a decree, which is very lengthy, but the important and controlling parts thereof are these:

"The court further finds that the defendant, for a period of two years prior to the filing of this petition, has repeatedly threatened the life of the plaintiff, and has on occasions without just cause procured his arrest, and that she has during said period of time threatened repeatedly to destroy his business and his earning capacity, and bring him to financial ruin. That she has repeatedly cursed and applied insulting language towards the plaintiff in the presence of the children of said parties, and in public, and has during said period of time induced the children of the said marriage to dislike the plaintiff herein, and has on repeated occasions threatened the plaintiff with divorce proceedings, and has from time to time demanded from the plaintiff all of the money realized from the conduct of his business, and has denied to the plaintiff access to their home, and has refused during said period of time to prepare the meals for plaintiff in their said home, and has refused to permit the servants paid by the plaintiff therein so to do; has denied the plaintiff conjugal devotion and affection; has been cold and indifferent to the plaintiff, and when in sickness has refused to administer to his wants, and during such times has cursed the plaintiff in public; has on many occasions during said period of time declared to the public that the plaintiff was a crook; that he spent his money on women of questionable character; and has accused the plaintiff on many occasions of domestic infidelity; has on many occasions made threats against the customers of the plaintiff in his business, and by her public remarks and utterances driven the customers of the plaintiff away from his business, all to such extent that the plaintiff's business has decreased in volume until the same is now scarcely self-sustaining, driving the plaintiff into a financial condition where his assets and business have been dissipated and wasted and to a condition where the entire property of the plaintiff is scarcely enough to pay his indebtedness. That by reason thereof plaintiff was greatly humiliated among his friends, acquaintances, patrons and customers, and has become greatly worried and sick, and for a considerable time before and since the filing of the petition confined to the hospitals and under the case of doctors and physicians, and thereupon wholly destroying the peace of mind of the plaintiff to such an extent as to render a further continuation of the marriage relation unbearable, and that the plaintiff is without fault in the premises."

The court then decrees:

First. "That the plaintiff be divorced from the defendant." and

Second. "That the plaintiff be, and is hereby awarded said described real estate * * * in his own absolute and exclusive right and title, free from any and all right and claim of the defendant, Mary C. Tobin,

therein, and the joint title thereto of record is hereby decreed to be vested in the plaintiff. The defendant is adjudged within 10 days from this date to execute to the plaintiff a quitclaim deed thereto, and that upon her failure so to do, this decree shall stand in lieu thereof, as vesting the full legal and equitable title in and to said premises in the plaintiff. And the plaintiff is adjudged and awarded all of the household furniture and furnishings and household equipment now and at the time of the filing of the petition in this cause located in said described bungalow and upon said described premises, together with the Wescott automobile now and heretofore owned by the plaintiff. * * *

"It is further ordered, adjudged and decreed that plaintiff have the sole and exclusive custody, care, and education of three said minor children * * * and he is charged with their support, maintenance, care, and education. The plaintiff is required, until further order of this court, to maintain the said John Tobin and Sylvan Tobin in St. Mary's Academy at St. Marys, Kan., at the cost and expense of the plaintiff, with the right of visitation of all of said children given to defendant at all reasonable times, and at such times as are in keeping with the rules of said institution.

"It is further ordered, adjudged, and decreed that plaintiff pay to the defendant the sum of $50 per month as alimony, payable monthly in advance into the office of the clerk of this court, until such time as may be further directed by the court."

To reverse this judgment, the defendant filed in this court her petition in error on October 5, 1922, and attached thereto a case-made, or a full record of all the proceedings in the cause. The defendant assigns numerous errors, but same may be considered:

First. That the court erred in awarding to the plaintiff the title to and the possession of the homestead belonging to plaintiff and defendant, the same having been accumulated by their joint efforts covering the period of their married life.

Second. He erred by not giving her the custody of the children.

The defendant contends that the power of court in making disposition of the property is governed entirely by the statute. And in support of this quotes from the case of Beals v. Ayers (N. M.) 185 Pac. 780, wherein it is said:

"Without pursuing this subject further, we think it is well established by the great weight of authority that the power of the courts in matrimonial matters in this country are to be determined entirely upon the terms of the statue conferring the jurisdiction."

Counsel also further quotes from the case of Maslen v. Anderson (Mich.) 128 N. W. 723, and Baker v. Dayton, 28 Wis. 367, wherein it is said:

"The courts, either of law or equity, possess no powers except such as are conferred by statute, and to justify any act or proceeding in case of divorce, whether it be such as pertains to the grounds or cause of action, process, pleadings or practice, or to the mode of enforcing the judgment or decree, authority therefor must be found in the statutes, and cannot be looked for elsewhere, or otherwise asserted or exercised."

Defendant in her brief further says:

"This proposition, we take it, will not be disputed, and starting with this proposition, we desire to call the court's attention to the statute providing for the action of the court with reference to the disposition of property, where a divorce is granted, first, for the fault of the husband; second, for the fault of the wife." etc.

Defendant contends that the property in question in this suit between her and the plaintiff was property accumulated by their joint industry, and while there is no such property known to the Oklahoma law as community property, as the same exists in several of the states, yet that the jointly accumulated property of the husband and wife is in effect the same as community property, and that the same should be divided accordingly when a decree of divorce is entered by the court.

The plaintiff in his brief, referring to the contention of the defendant, says:

"However, we contend that under the facts of this case, and the law of this state, all of the property (meaning the property in the suit) constitutes property acquired by the joint efforts of the parties hereto during marriage."

And also:

"Defendant in error concedes the correctness of the legal proposition as stated by counsel for plaintiff in error * * * that 'the power of the district court on dissolving the marriage by divorce over the property of the spouses is entirely controlled by statute' and we stand squarely on this principle of the law."

So it is apparent that there is no dispute between the plaintiff and the defendant as to two propositions: First, that any decree entered by the district court must have its authority in the statute of the state; and, second, that the property involved was jointly accumulated by the parties hereto.

The defendant says that the court erred in that the court did not give her at least half

of the value of the place, which is referred to as the homestead, and which is described in that part of the decree hereinabove set out.

Section 4969, Rev. Laws Okla. 1910, provides:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. In case of a finding by the court, that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

The defendant vigorously insists upon her legal rights herein, as to a division of the property.

Counsel for each party in their briefs declare:

"That the power of the district court on dissolving the marriage by divorce over the property of the spouses is entirely controlled by statute."

Declining to either concede or deny this proposition concurred in by counsel, we say if it is true, then that part of the decree awarding to the defendant $50 per month as permanent alimony would be entirely without the provisions of the law. There is no provision of the statute of this state authorizing the district court to award alimony to the wife when a divorce decree is obtained by her husband on account of her fault. The cases which have engrafted this rule on to the law of this state have been based upon section 4550 of the Statutes of Oklahoma

Territory of 1893, and that provision thereof which is:

"If the divorce shall be granted by reason of the fault or aggression of the wife, the court shall order restoration to her of the whole of her property, lands, tenements, and heriditaments owned by her before or by her separately acquired after such marriage, and not previously disposed of, and also share of her husband's real or personal property or both as to the court may appear just and reasonable." Pauly v. Pauly, 14 Okla. 1, 76 Pac. 148.

The only provision of the statute now existing on the subject of awarding alimony on granting a divorce is subdivision 1, as we have subdivided it, of section 4969, Rev. Laws 1910, hereinbefore set out, and that provision on which the courts have held that a decree awarding alimony to the wife when a divorce is granted to the husband for her fault is no longer the statute of this state. It is clear, therefore, that if the court, under the present condition of the divorce statutes of Oklahoma, has any authority to allow alimony against a husband when a divorce is granted him on account of his wife's fault, it is not to be found in the statutes of the state, but must find its basis on the humanitarian principles of modern times which courts of equity have assumed to apply in the interest of an erring wife who, without assistance from her former husband, would be particularly destitute.

In 1 Ruling Case Law, page 936, the principle upon which such decrees are entered, is stated:

"According to the rule of the common law, where a divorce was granted for the misconduct of the wife, she was not entitled to alimony. This was productive of so much hardship, however, and so frequently left her a prey to starvation or a life of shame * * * that statutes have been enacted in England and a number of the United States authorizing the courts to make such an allowance of alimony in favor of a guilty wife as the surrounding circumstances may justify. In some instances, although not allowed in express terms, the language of the statute is sufficiently broad to grant by implication such authority. Obviously she is never entitled to it as a matter of course, and it is entirely discretionary with the court to allow her such alimony as, under the circumstances, is reasonable, just and right. * * *" (15 Ann. Cas. 376, and note; 20 Ann. Cas. 24, and note; Davis v. Davis (Ga.) 68 S. E. 594; 30 L. R. A. [N. S.] 73).

Section 4969, Rev. Laws Okla. 1910, when properly analyzed, falls into three divisions.

First. The first division concerns a decree granting the wife a divorce on ac-

count of the fault of the husband, and is as follows:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name, if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage, or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or installments, as the court may deem just and equitable."

This is applicable only in cases where the wife is decreed a divorce because of the wrongful conduct of her husband, as we analyze it, and it is only in cases of this character where the statute provides for alimony. It disposes of her separate property also, but between the parties now before the court there is no contention as to any property which either claimed to own prior to the marriage.

Second. The second division of this section of the statute deals with the property jointly acquired during the marriage, and is:

"As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonably by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof."

This division of the section contemplates and requires that, whether the divorce is granted to the husband or the wife, the property jointly acquired by them during the marriage, whether it be in the name of the husband or the wife or both, shall be divided between them in a manner just and reasonable, taking into consideration all the facts and circumstances surrounding the life of the parties, and the efforts of each to accumulate the same.

Third. The third division of the statute deals with the property situation only in cases where the husband is granted the divorce on account of the wrong of the wife, and it is required for the benefit of the children of the marriage to provide for them out of the separate property of the wife. The separate property or estate of the wife referred to in this provision of this section of the statute has reference to her separate property other than that accumulated by the joint industry of the husband and wife during the marriage.

The above quoted subdivision 2 of said section 4969, Rev. Laws 1910, is that provision of the statute on which the authority of the district court to deal with this property in question is based, and the statute in effect is nothing more nor less than a direction to the court to divide the jointly acquired property, or the property acquired during marriage by the joint industry and efforts of the husband and the wife, in a manner as may appear just and reasonable, either by setting it apart in kind, or if it is not advisable to do that, setting all of the property aside to one of the parties and requiring the other to pay in money such sum as may be just and proper to bring about an equitable division thereof.

In the case of Thompson v. Thompson, 70 Oklahoma, 173 Pac. 1037, this court said:

"The statute regards the property of married persons as falling into two classes—the separate property of each of the spouses and the property which is accumulated by the business side of the marriage. This latter character of property, very similar in conception to the community property of the community property states, is regarded as being held by a species of common ownership."

In considering the above quoted subdivision of said section 4969 as applicable to the question involved herein, it must be borne in mind that we are not discussing what is ordinarily referred to as alimony. Much confusion arises in reported cases because the distinction which exists between a division of property and the right of the court, under the conditions provided by the statute, to grant the wife maintenance money, payable by the husband in installments, or a lump sum as may be decreed by the court, to be made out of his property, either personal or real, is not made clear. The confusion frequently arises by reason of the fact that in some cases where the court decrees alimony to the wife a certain portion of the property of the husband is set aside by order of the court as alimony, in lieu of payment of a specified sum in money. An allowance made by the court for the maintenance of the wife, either pending her suit for divorce or after the divorce decree is entered in her favor, out of the separate property of the husband, is alimony, wheth-

er it reach the wife in the form of money or in the form of property carved out of the property estate of the offending husband.

On the other hand, it is in no sense alimony when the court, under the applicable provision of the statute, whether the divorce is granted to the husband because of the fault of the wife, or to the wife because of the fault of the husband, makes an equitable and just division of the property—not the separate property of the wife, nor the separate property of the husband—but of the property resulting from their business ability, their industry and economy during their married life, which the law considers as the jointly acquired accumulations of the husband and the wife.

It is evident that said subdivision 2 is applicable in any case, whether the divorce is granted on account of the fault of the husband or the wife. Otherwise the property jointly acquired during marriage could not be divided when the fault was adjudged against the wife, except by consent of the parties, and an interpretation leading to such a confused result is not favored by the law.

And when the husband is granted the divorce, or the wife is granted the divorce, the provision of the law remains the same—that as to all such acquired property, the parties are each entitled to an equitable division of the same.

In the case of Davis v. Davis, 61 Okla. 275, 161 Pac. 190, this court said:

"While it is the duty of the wife to reside with the husband and to bear with his shortcomings and endure the same as long as possible, yet no law prescribes that she must do so, and when she chooses to abandon him, if his own conduct does not cause such an abandonment, then his legal duty to longer maintain her is ended, but if property has been acquired during their wedded life by their joint effort, she has a vested interest in such property which she does not forfeit, even though her course cannot be justified, and she is entitled to her proper share of such property."

This does not mean, however, that they are each entitled to an equal division of the property. There may be circumstances surrounding the accumulation of the property under which, when the unfortunate hour of the divorce is reached, it would be grossly inequitable to divide the property equally between the parties. For this reason, the language of the statute uses the words "fair and equitable division," giving the court a wide discretion under all the circumstances, lest the court, in trying to carry out the provisions of the statute as to equity, may be driven to an inequitable decree between the parties.

In determining what is equity as to jointly acquired property, the court not only has a right, but should take into consideration the efforts of the respective parties during their married lives. Circumstances may arise under which, when the court under this provision of the statute is called upon to divide the jointly acquired property, the wife might be entitled to a large per cent. of the accumulations, or much in excess of one-half. If it should develop in the trial of the cause that the accumulations have been due to her economy, industry, frugality, and sturdy virtues, which have been a stay to the home and the constant guard of the accumulations, and at the same time it should develop that the husband has not been frugal, has not been industrious, has not been sagacious, but, on the contrary, has spent much of his money in riotous living, in gambling, drinking, or associations truant to his marriage vows, it would not be equitable to the wife, under these circumstances, that the husband should be given half of their property.

In the case of Johnson v. Johnson (Kan.) 46 Pac. 700, the Supreme Court of Kansas in passing on the property rights of the parties, among other things, said:

"Alimony is an allowance which by order of court the husband or former husband is compelled to pay to his wife or former wife, from whom he has been legally separated or divorced, for her support and maintenance. The foundation of this allowance is the duty of the husband to provide for the wife's support; and where a divorce or separation occurs because of his fault, the duty of providing for her maintenance continues, and the court by an allowance of alimony compels its performance."

This comment by the Kansas court stated the law, and the rule to be followed in this state under the above mentioned first subdivision of said section 4969. The court further said:

"A division of the property of the parties is an essentially different thing. No matter what party may be at fault, nor what is the decision of the court on the merits of an application for divorce, the court may for good cause make an equitable division and disposition of the property of the parties. In doing this, the power of the court exists only over the property of the parties owned by them at the time the order is made. It cannot reach the future and bind subsequent earnings or accumulations on their part."

In the case of Davis v. Davis, supra, this court quoted with approval the Supreme Court of Kansas in the case of Bowers v. Bowers, 78 Pac. 430, in which that court said, in distinguishing between alimony and a division of property:

"The principal distinction appears to be that alimony has for its basis maintenance only, while a division of property has for its basis the giving to each party the portion of the property justly and equitably due, without regard necessarily to the necessities of the case."

The defendant contends in effect that there should have been an equal division of the property jointly accumulated, but this position cannot be sustained. Martin v. Martin (Wis.) 105 N. W. 783; Richardson v. Richardson (Wash.) 78 Pac. 920; Sullivan v. Sullivan (Wash.) 100 Pac. 321; Kolbe v. Kolbe (Wash.) 97 Pac. 236: Campbell v. Campbell (Mich.) 112 N. W. 481; Brenger v. Brenger (Wis.) 125 N. W. 109; Johnson v. Johnson (Kan.) 46 Pac. 700.

Coming now to the case at bar, the trial court in the decree of divorce, in addition to what is hereinabove set out, found that the plaintiff had given the defendant considerable sums of money on divers occasions. That one time, he conveyed her, after she had brought a suit for divorce against him, five years prior to the filing of this case, a home in Capitol Hill, near Oklahoma City, of the value of approximately $3,500, and that she immediately sold the same, over his protest, for about one-third of its value, and dissipated the money; that she on several occasions drew money from his bank account in considerable sums, and used the same, not in the ordinary matters of maintaining herself and her home, but on projects and enterprises of her own making. That on one occasion she took from him several hundred dollars which he had placed in the home overnight, evidently while he was asleep, and refused to return the same to him. That she had sued him twice for divorce for alleged causes that were not in fact real; that she had repeatedly cursed and abused him; that when he was taken to the hospital to be operated on for appendicitis, she had stated in effect that if he died it would bring added joy to her; that she had been furnished money for her own personal expenditures in excess of what his financial condition would warrant; and other findings of misconduct on her part too numerous to incorporate in this opinion, all of which findings are sustained by the evidence in the case.

And the question is, What, under these conditions, is an equitable division of the small amount of property which represents the net accumulations of this marital partnership, wherein one partner worked continuously for nearly 18 years in his place of business, an unostentatious meat shop in the city of Oklahoma City, and by his efforts has maintained his wife and his three children, not only in comfort, but in more than the ordinary luxuries of life, and at the same time, with but slight, if any, encouragement, wifely assistance, or sympathetic co-operation from her during the earning period of their lives?

If we are permitted to join in the lament found in the brief of counsel for defendant, to the effect that at her age in life the decree of the court strips her of her family, her home, her property, and leaves her without means of support, without her children and without her honor, we would only say that it is a regrettable condition, but the law cannot regulate the attitude of a wife to her husband, or of the husband to his wife.

It is perfectly clear from this record that the wife not only failed to cultivate the virtues of moderation and charity, which during the 18 years of her married life should have become so stable as to have been a sure defense against a breach under every crisis, but, on the contrary, the efforts of her husband for her, her children, and their home were not only not appreciated, but she so far forgot the ordinary decencies as to hold him up before his own children to ridicule, to vituperation and slander, not only to the discomfort of the home life, but to the destruction of the moral fiber in their innocent offspring. Her conduct from the whole record forfeited her right to the provisions of the law that are thrown around a wife ordinarily. Her conduct has forfeited her right to the rearing of her children. In them society has such an interest, to say nothing of the interest personal to the children themselves, that courts of equity are vested with the power in the interest of the children and of society to prevent their youthful lives being poisoned with the conduct, even of their mother, as to matters of every-day importance, such as is shown by this record to have been current, and the trial court, governing his action by the religious affiliation of the family, felt it the best thing to be done for the children to place them in the institutions mentioned in his decree, and in this we fully concur. No doubt in the institutions to which they have been consigned by the decree of the lower court they will be given an opportunity

not only for education, but for religious and social surroundings such as are so necessary to the proper equipment of the child mind and heart, to qualify them for good citizenship in a country such as ours.

We have examined the record, and are of the opinion that it amply and fully sustains all of the findings of fact made by the trial court.

The rule announced by this court in contested divorce cases, in Johnson v. Johnson, 72 Oklahoma, 179 Pac. 559, states:

"We find that while the evidence was conflicting, there was ample evidence to support the findings of the trial court upon the issues raised by the pleadings and determined by the court. This court has frequently held that in a contested divorce case, where the evidence is conflicting, and there is sufficient evidence to support the findings of the court and the decree based thereon, the same will not be disturbed on appeal." (Stovall v. Stovall, 29 Okla. 125, 116 Pac. 791; Adams v. Adams, 30 Okla. 327, 120 Pac. 566; Penn v. Penn, 37 Okla. 650, 133 Pac. 207; Vick v. Vick, 45 Okla. 412, 145 Pac. 815; Robertson v. Robertson, 73 Oklahoma, 176 Pac. 387.)

Bearing in mind what has been said hereinabove as to the considerations that enter into the question of an equitable division, the question presents itself as to what, under the facts in this case, would constitute an equitable division of the property. The trial court found that the net value of the property now held and herein involved was approximately $2,000. The court reached the conclusion as to the net value of the accumulations by adding the proven value of all the property and deducting therefrom the amount of the indebtedness.

The defendant says this was improper, as she was entitled to one-half of the value of the property in question. The indebtedness taken into consideration by the court grew out of the purchase of the real estate in question, the lien for taxes, etc., on the same, the indebtedness due for the automobile in question, the indebtedness due on the shop or place of business of the plaintiff, which was the source of the money which purchased all of the property, and other items of indebtedness growing out of business transactions resulting in and incident to the accumulated property, an interest in which the defendant contends for.

If the contention of the defendant should be sustained, and she be given one-half of the value of the tangible property now held, and the plaintiff should be required to pay all of the outstanding indebtedness, the indebtedness would far exceed the value of his portion of the property, and he would have nothing remaining after the indebtedness was paid.

We think that in arriving at the net value of the property which represents the jointly acquired property of the parties, the deduction of such indebtedness as has been incurred either for the property or incident to the accumulation of the property should be made for the purpose of determining, after the indebtedness is paid, what the joint accumulation of the properties is. This is necessary before the power of the court to equitably divide the property could be intelligently exercised.

And the Supreme Court of Kansas, in the case of Galutia v. Galutia, 82 Pac. 461, says:

"There are many circumstances which properly enter into the mind of the court when making such award, such as the financial abilities of the parties, how the property was accumulated, the conduct of the parties, their station in life, and the question of custody and maintenance of the children."

The court has a right also to take into consideration the advancements received by one of the parties out of their jointly acquired property—to some extent analogous to an accounting.

The presumption of the correctness of decree and findings in divorce cases is the same as in other civil cases (19 C. J., p. 192, sec. 475), and this principle, in effect, is recognized by this court in case of Derrett v. Derrett, 66 Okla. 124, 168 Pac. 455-56, citing Tucker v. Thraves, 50 Okla. 691, 151 Pac. 598, substantially to the effect that in cases of equitable cognizance the court on appeal has power to go into and examine the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, to render such judgment as the trial court should have rendered. Schock v. Fish, 45 Okla. 12, 144 Pac. 584 and cases.

Measured by these rules, and under these circumstances, we are of the opinion that the trial court made a division of the jointly acquired property by charging the large amounts received by her against her interest therein, which indeed were more than the net value of the properties now owned. There is incorporated in the decree of divorce that the plaintiff shall pay to the defendant the sum of $50 per month alimony as such. The record discloses that this was done on the suggestion of the attorney for the plaintiff. The grant of alimony cannot be considered a division of property. Ro-

maine v. Chauncey, 15 N. Y. Supp. 198; Guenther v. Jacobs, 44 Wis. 354; Lynde v. Lynde (N. J.) 52 Atl. 694; Fickle v. Granger (Ohio) 93 N. E. 527.

The trial court placed the burden where it properly belonged, upon the plaintiff, to maintain and educate the three minor children, giving him their custody, with the wife the right to visit them at any and all reasonable times.

We are of the opinion that the requirement of a strict compliance by the plaintiff with the decree as entered will serve to the best advantage of the children, in the long run, the wife, and himself, the same remaining subject to modification as to the custody of the children, as the future conduct of the parties may warrant.

The judgment of the trial court is affirmed.

JOHNSON, V. C. J., and McNEILL, KENNAMER, NICHOLSON, and COCHRAN, JJ., concur.