## HATCHETT v. HATCHETT.

No. 13443—Opinion Filed April 17, 1923.

(Syllabus.)

1. **Divorce—Grounds—Cruelty—Provocation.**

It is the general rule that a divorce will not be granted on the ground of cruelty where the cruelty was provoked by the misconduct of the complainant.

2. **Same—Gross Neglect of Duty.**

While neglect of duty in order to constitute a ground for divorce must be glaring, flagrant, shameful, or monstrous, where the testimony shows that the husband is 67 years of age and the wife approximately one-half that age, and the wife by importunity, threats and false imprisonment obtains from the husband the full possession and control of the property and excludes him from the use and benefit thereof; and where the wife has the husband arrested on a false charge of insanity and arrested on groundless complaints for the sake of getting rid of his presence and for the purpose of obtaining control and to secure for herself the full and sole use and enjoyment of the property that the two had earned during their married life; and where the wife is guilty of such conduct as is calculated to bring reproach upon her good name and that of her family, such acts constitute gross neglect of duty within the scope of the statute providing for divorce on that ground.

3. **Divorce — Decree — Equitable Division of Property.**

A court of equity on granting a divorce may make an equitable division of the property acquired by the parties jointly during their marriage; and in making such division the court is not required to divide the property equally between the parties, but is given a wide latitude in determining such division.

4. **Same — Gross Neglect of Duty—Sufficiency of Evidence.**

Evidence examined, and held to support the decree granting a divorce on the ground of gross neglect of duty and to show a fair and equitable division of the property acquired by the parties during their marriage.

Error from District Court, Tulsa County; ValJean Biddison, Judge.

Action by Gertrude Hatchett against W. P. Hatchett for divorce, etc. Cross-petition by defendant. Judgment for defendant, and plaintiff brings error. Affirmed.

A. F. Moss and L. G. Owen, for plaintiff in error.

McGuire & Marshall, for defendant in error.

COCHRAN, J. This action was commenced by plaintiff in error against defend-

ant in error for a divorce, custody of the children, alimony, and division of property. The parties will hereinafter be referred to as plaintiff and defendant as they appeared in the lower court.

Defendant filed his answer and cross-petition, in which the allegations upon which plaintiff relied for divorce were denied, and divorce was asked by the defendant on the grounds of adultery, gross neglect of duty, and extreme cruelty. A decree was rendered denying the plaintiff a divorce, but granting a divorce to the defendant on the ground of gross neglect of duty, and a decree was also entered making a division of the property and awarding the custody of the children to plaintiff for a part of the time and to the defendant for a part of the time.

Plaintiff contends that the finding of the trial court denying her a divorce is contrary to the evidence. There is a sharp conflict of testimony as to the acts of cruelty complained of. It is true that the record shows conclusively that the defendant was guilty of using profane language in the presence of his wife and children, but there is also ample evidence in the record from which the trial court was justified in concluding that the plaintiff was rather proficient in the use of profane language herself and rather gifted with nagging propensities, which brought forth the outbreaks of profanity from the defendant. Neither party should be excused for the conduct in this regard, but, in view of the condition of the record, we believe that the finding of the trial court in this regard was in accordance with the general rule announced in 19 C. J. 78, as follows:

"The general rule is that a divorce will not be granted on the ground of cruelty when the cruelty was provoked by the misconduct of the complainant."

The trial court found against the defendant as to the allegations of adultery and extreme cruelty, but sustained the allegations of gross neglect of duty. The plaintiff contends that the evidence is not sufficient to sustain the finding of gross neglect of duty. In Beauchamp v. Beauchamp, 44 Okla. 634, 146 Pac. 30, this court used the following language:

"The ninth subdivision of section 4545, St. 1893 (section 4962, Rev. Laws 1910), makes 'gross neglect of duty' a ground for divorce. This use of the word 'gross' requires that the 'neglect of duty' must be so glaring, flagrant, shameful, or monstrous, under all the relevant facts of the case, as to be obvious to the common understanding and inexcusable."

Having in mind this rule, let us proceed to measure the facts which may have been reasonably found by the trial court from the evidence, and determine whether there was a neglect of marital duty on the part of the plaintiff, and, if so, whether it was flagrant, shameful, and monstrous, and constituted a gross injustice toward the defendant.

At the time of the separation, the plaintiff was 34 years of age and the defendant was 67 years of age. The defendant was the owner of approximately $18,000 worth of property at the time of the marriage, which was the result of the joint industry of the defendant and his former wife. The plaintiff had no property whatever. Some time after the marriage, approximately $16,000 of the defendant's money was invested in an apartment house in the city of Tulsa, and this building was practically all of the property of the parties at the time of the separation. After the purchase of the property, a third story was added to it and paid for partly out of the earnings of the plaintiff and defendant and partly out of property which belonged to the defendant prior to the marriage. The trial court found that the value of the entire property owned by the plaintiff and defendant at the time of the separation was $50,000. Shortly after the marriage of the plaintiff and defendant, the defendant executed a will in which he left $5,000 to a daughter of a former marriage. Some time thereafter, in order to keep peace in the family, he reduced the amount of this bequest to his daughter to $3,500. The plaintiff was not satisfied with this condition very long, and procured the execution of a third will in which the amount of the bequest to the daughter was fixed at $2,500, and finally, in 1921, while the plaintiff was spending the winter in Florida, she advised the defendant that unless a new will was drawn making her practically the sole beneficiary thereunder she would quit him. A new will was drawn in accordance with her desire. The testimony further shows that the plaintiff finally succeeded in taking over the complete handling of the property belonging to plaintiff and defendant, and changed the bank account from the defendant's name to the plaintiff's, and began to invest the savings in property taken secretly in her own name. During this time the plaintiff went on numerous picnic and bathing parties with other young people, the plaintiff being attended by a young man living in the apart-

ment. The defendant was left at home to take care of the children. The conduct of the plaintiff on these occasions was such as was calculated to bring reproach upon her good name and that of her family; and during this time plaintiff was also guilty of such conduct in the apartment house owned by the parties and in which they maintained their home as to bring about remonstrances from her husband and a request that she be more discreet in her conduct. It was contended by the plaintiff that the final separation was brought about by an attempt on the part of the defendant to do her bodily harm. This was denied by the defendant, and he insisted that the final breach was occasioned when he remonstrated with her about her conduct with a young man by the name of Young, who lived in the apartment house, and a desire on the part of the plaintiff to get rid of the defendant and take over his property. The trial court evidently believed from the evidence that the charge of personal violence on the part of the defendant at that time was not sustained by the evidence, and such conclusion is important in view of the actions of the plaintiff imediately after the alleged assault. If, in fact, the assault had been made and plaintiff was afraid that her life was in danger, her subsequent acts might be justified, but, if it is determined that her charge of assault was without foundation, then her subsequent acts cannot be justified at all. We are of the opinion that the finding of the trial court that the charge of assault was not supported by the evidence was correct. Immediately after plaintiff claims the assault was made, she procured a warrant from the city court for the arrest of the defendant for disturbing the peace, and a policeman was dispatched to the apartment and defendant was arrested while he was still in bed and taken before the city court, where he made bond for his appearance. Upon his return home, he was greeted by a deputy sheriff, who arrested him on a warrant for assault to kill, which had been sworn out by the plaintiff, and was taken before an examining magistrate, and, after making bond and being released, was then arrested on an insanity warrant sworn out by the plaintiff, and, after finally procuring his release and upon again undertaking to depart for his home where he might meditate over the many occurrences of the day, he was greeted by a restraining order issued in this case restraining him from entering, using, or occupying his home. There is ample evidence in the record to justify the trial court in finding the above facts.

Such being the condition of the record, do these facts constitute gross neglect of duty? We conceive it to be the duty of both the husband and wife to so handle the property which has been acquired by their joint industry that each may have the enjoyment and use thereof. It is also the duty of the wife to do her part in making the home a place of peace and happiness for the husband and children, and it is her duty to so conduct herself as to protect her good name and the good name of her husband and children. We think the above facts show a gross and flagrant violation of all of the above duties which the plaintiff owed to the defendant and her family, and it is controlled by the rule announced by the Supreme Court of Kansas in Osterhout v. Osterhout, 2 Pac. 869, the syllabus of which is as follows:

"While as a general rule the duty of family support rests upon the husband, yet when, by the joint labor and economy of husband and wife for years, a property has been accumulated, each has a right to have that property used for maintenance and support in the weakness and feebleness of old age; and when the husband is old and feeble, and the wife younger, and comparatively stronger and vigorous, and by importunity, threats, and promises obtains from him the full possession and control of all the property, the same being sufficient to furnish reasonable support for both, and then refuses to use any of such property for his support, and turns him out of their house to depend on the charity of friends, she is guilty of a gross neglect of duty.

"When a wife trumps up a false charge of insanity against her husband, and by strategy secures his confinement in an insane asylum, and all for the sake of getting rid of his presence and the burden of his support, and to secure to herself the full and sole use and employment of the property the two have earned during their married life, she is guilty of gross neglect of duty, within the scope of the statute concerning divorce."

We are of the opinion that the testimony is ample to support the finding of the trial court that the plaintiff was guilty of gross neglect of duty.

It is next contended that the division of property made by the trial court was inequitable and unjust. In determining this question it must be borne in mind that the award made to the plaintiff was not alimony, but was a division of property made under the provisions of subdivision 2, section 4969, Rev. Laws 1910, and in making the division under that statute the court is controlled by the rule announced in the third paragraph of the syllabus of Tobin v. Tobin.

No. 13835, decided by this court on March 13, 1923, 89 Okla. —, 213 Pac. 884, as follows:

"A court of equity, on granting a divorce to either the husband or wife, is required by subdivision 2, as herein divided, of section 4969, Rev. Laws 1910, to make a just, fair, and equitable division of the properties acquired by the parties jointly during their marriage. In doing so, the court is not required to divide the property equally between the parties, but is given a wide latitude in determining just what part of the jointly accumulated properties shall be given to each of the parties."

The trial court found the total value of the property owned by the plaintiff and defendant to be $50,000. Of this amount $46,726.77 was represented by the apartment building in Tulsa. The decree provided for the creation of a trust in favor of the minor children of the plaintiff and defendant of a one-fifth interest in the apartment property, so that the income therefrom could be used for their maintenance and support. After deducting the value of this trust from the value of the property, there remained property of the value of $40,675. The testimony shows that at the time of the marriage, the defendant had $18,000 which was invested by the plaintiff and defendant and which, together with the increase in value of the real estate, represents most of the present value of their joint property. If this $18,000 is deducted from the $40,675, there is a balance of $22,675. The trial court awarded the plaintiff property valued at $11,000. We think, under all the circumstances, the judgment of the trial court was fair and equitable and should be affirmed, and it is so ordered.

JOHNSON, C. J., and KENNAMER, NICHOLSON, BRANSON, and MASON, JJ., concur.