Alba Louise **FITZER**, Plaintiff in Error,

v.

Mack Troy **FITZER**, Defendant in Error.

No. 42409.

Supreme Court of Oklahoma.

Sept. 16, 1969.

Harold B. Dane, Dane & Roberts, Stigler, for plaintiff in error.

Robert E. Jones, Waldo E. Bales, Tulsa, for defendant in error.

LAVENDER, Justice.

This appeal, by the plaintiff-wife in a divorce action, who was granted a divorce from the defendant-husband on the ground of gross neglect of duty on the part of the defendant involves only that portion of the judgment in which the trial court divided the property of the parties. There were no children to be involved in the judgment.

It appears from uncontroverted testimony that the parties had been married thirty years when the defendant left the home of the parties near the community of Enterprise in Haskell County, Oklahoma, to go to work, as a carpenter, at Decatur, Illinois, slightly over a year before this action was commenced; that he worked there a little less than three months, returning to the home for a few days at a time on two different occasions during that time; that he then came to Quinton, in Haskell County, Oklahoma, and remained there about three weeks without informing the plaintiff that he was in the vicinity, and then went to California, and, after being there for a short time, went to Juarez, Republic of Mexico, where he obtained a decree of divorce without any notice to this plaintiff, and, shortly thereafter, was married in Las Vegas, Nevada; and that this plaintiff did not know anything about such divorce proceeding until the defendant showed up, with his new wife, and demanded that they divide up all of their property, half and half, which this plaintiff refused to do.

It also appears from the testimony that neither of the parties had any real or personal property at the time they were married, other than a cow and a horse that the plaintiff's father gave them at that time;

that, after several years of marriage, they acquired, in both of their names, a 120-acre tract of land in Haskell County, Oklahoma (less some mineral interests reserved by prior owners), that had a small house on it, and a two-acre tract of land in the same section (less half the minerals) upon which they moved a house which they used as their residence until the defendant left to work in Illinois and which was the residence of the plaintiff at the time of the trial; that, a few months before the defendant left for Illinois, they sold a tractor and used the proceeds as the down-payment on a new pick-up truck and, by agreement, took the title in the defendant's name and transferred the title to an older pick-up truck from both names to that of the plaintiff, and, from then on, considered that the older truck was the separate property of the plaintiff and the newer truck was the separate property of the defendant; and that, a few months before that transaction they sold half of the cattle that they had at the time. The plaintiff testified that, at that time, they listed the remaining cattle, by name, and divided them half and half (with the defendant denying that they ever agreed to divide the cattle between them); that the defendant sold all but six head of his cattle before leaving for Illinois, and that, upon his request, by letter from California, that she sell "the cattle that belongs to me including the bull," she sold some of her cattle, kept his cattle, and sent him $500.00, the amount he had told someone else they could have them for on his last visit from Illinois. The plaintiff also testified that during the same month in which she filed her petition for divorce, she sold the remaining cattle for about $3,700.00, and the defendant testified that he did not receive any of that money.

The plaintiff testified that she had about $200.00 when the defendant left for Illinois; that, during his absence, the defendant sent her a total of $170.00 (the defendant said a total of about $250.00); that she worked in the "Chicken Palace" about five months and sold some of her yearlings after he left, and, during the winter between the filing of her petition for divorce and the trial, sold some hay from the land involved herein; that she rented the home place (the two-acre tract involved herein) for a while for $50.00 per month and received $10.00 per month rent on a small house on the 120-acre tract involved herein; and that she lived with her mother, across the road from the home place, and slept in a room in the home place part of the time, while the home place was rented. She also testified that, after the defendant left for Illinois, she paid off a $307.25 joint note of the parties, paid $25.34 to have the roof of the porch of the home place repaired, paid a total of $289.90 to have a well drilled, a pump installed, and a well house built on the home place, paid two years' taxes on the property involved in the toal amount of $220.44, paid a $58.60 premium on fire and windstorm insurance on the improvements on the real estate involved, and a total of $158.10 in premiums on insurance on the two pick-up trucks.

The trial court awarded to the defendant the newer pick-up truck (the title to which stood in his name) and a designated 80 acres of the 120-acre tract, and awarded to the plaintiff the older pick-up truck (the title to which stood in her name), the two-acre home place and the household furnishings therein, the other 40 acres of the 120-acre tract, and such sums as have accumulated, to the date of the judgment, in a named bank, as delay rentals on the oil and gas lease or leases on the property involved in the action, and ordered that each party pay his or her own attorney fee and costs.

It was stipulated at the trial that the household furnishings had a value of from $400.00 to $600.00; that the two-acre tract was worth about $6,000.00 and that the 120-acre tract was worth about $20,000.00. There was no stipulation, or evidence, that any particular portion of the 120-acre tract was worth any more or any less than any other part of the tract, so we can only assume that the 40 acres thereof awarded to the plaintiff was worth $6,666.67 and that

the 80 acres thereof awarded to the defendant was worth $13,333.33.

There was no evidence (or any stipulation in the trial court or in this court) as to the amount of delay rentals, *if any,* accumulated in the named bank to the credit of the parties as of the date of the trial court's judgment. Since we cannot assign any value to the delay rentals in our consideration of the question involved herein, we shall ignore them in our consideration of that question. Likewise, there was no evidence (or any stipulation in the trial court or in this court) concerning the value of either of the two pick-up trucks mentioned in the trial court's judgment, except that there was evidence, in a letter to the plaintiff from the defendant in California, that the pick-up truck he had with him (the newer one by six model-years) had been involved in a "wreck" and had been "bent up pretty bad." Since the evidence indicates that the parties considered that the older truck was the separate property of the plaintiff and the newer one the separate property of the defendant, and there is no testimony that either truck was, at the time of the trial, worth more or less than the other one, we shall ignore them in our consideration of the question presented. This leaves only the division of the real property and household furnishings for our consideration.

Insofar as the evidence as to value is concerned, and viewing the stipulation concerning the value of the household furnishings in the light most favorable to the plaintiff, the property awarded to the plaintiff by the trial court's judgment had a value of $13,066.67, or $266.66 less than the property awarded to the defendant.

Both parties cite 12 O.S.1961, § 1278 as controlling in the situation involved herein, and concede that the property in question was "acquired by the parties jointly during their marriage," within the contemplation of said Section 1278, which provides:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. * * *."

In her petition, the plaintiff asked that she be granted all of the property of the parties located in Oklahoma (except the clothing and personal effects of the defendant) but did not ask for alimony, either temporary or permanent, and the trial court's journal entry of judgment does not mention alimony or any sum of money to be paid to either party, either in gross or in installments. Consequently, alimony is not involved herein, and the plaintiff's reply brief recognizes the fact, although, in her original brief, she contended that the trial court did not take into consideration the fact that the defendant had failed to support the plaintiff for almost a year before she filed her petition for divorce, and cited some Oklahoma cases in which this court stated some of the factors to be considered in determining the question of alimony to a wife. However, in her reply brief, she states that the point intended to

be raised in that proposition was that the relative financial conditions of the parties would enter into a consideration of what would be an equitable division of the jointly-acquired property.

Concerning the division of the property acquired jointly by the parties during their marriage, both parties rely upon the basic rules stated in such cases as Bishop v. Bishop (1944), 194 Okl. 209, 148 P.2d 472, 155 A.L.R. 604, and Wilson v. Wilson (1946), 198 Okl. 318, 177 P.2d 1020:

> "On granting a divorce to either the husband or wife, the court is required by [the statute that now appears as 12 O.S. 1961 § 1278, supra] to make a just, fair, and equitable division of the properties acquired by the parties jointly during their marriage. In doing so the court is not required to divide the property equally between the parties, but is given a wide latitude in determining just what part of the jointly accumulated properties shall be given to each of the parties."

The plaintiff contends that, considering the earning capacities of the parties and their opportunity for employment, and the conduct of the defendant during the year or so preceding the filing of the plaintiff's petition for divorce—abandoning the plaintiff without cause, failing in his statutory duty to support her (32 O.S.1961, § 3), securing an invalid decree of divorce in Mexico without any notice to her, entering into a bigamous marriage in Nevada, and then, based upon such invalid divorce decree, demanding partition of all of the property, one-half to each—a just, fair, and equitable division of the jointly-acquired property would require that she be given more than one-half of such property. She also argues that, since the husband in a divorce action usually is required to pay the wife's attorney fee, the trial court's order in this case that each party pay his or her own attorney's fee had the effect of increasing the defendant's portion of the property by at least $500.00 and reducing her portion of the property by the same amount.

In support of her argument concerning earning capacity, opportunities for employment, and conduct, the plaintiff cites (in her original brief) Weekley v. Weekley (1953), 208 Okl. 651, 258 P.2d 622, wherein this court held that the earning capacity of the husband is a proper element to be taken into consideration in determining the amount of alimony, and Eisenreich v. Eisenreich (1958), Okl., 323 P.2d 723, wherein it is said that, in determining the amount of alimony to be allowed a wife, consideration is to be given to the conduct of the parties, and the wife's condition and means, as well as the husband's estate and his ability to pay alimony.

Assuming that similar rules would be applicable to the matter of dividing the jointly-acquired property of the parties to a divorce action, we note that, except to the extent that the plaintiff's testimony that, during the month in which she filed her petition for a divorce, she received about $3,700.00 for the cattle then remaining, and the defendant's testimony that he did not receive any of that money, without any evidence concerning what disposition, if any, was made of that money, might be said to be some evidence concerning means, other than the property affected by the trial court's judgment, available to the plaintiff, there was no evidence concerning either party's assets at the time of the divorce; that, except for a statement in a letter to the plaintiff from the defendant while he was working in Illinois (before going to California where he was living at the time of the trial) that his rate of pay was $3.97 an hour and double for overtime, there was no evidence concerning the earning capacity of either of the parties at, or about, the time of the divorce; and that, except to the extent that a court might take judicial notice of the size, and location, of the community of Enterprise (near which the plaintiff was living at the time of the divorce), and surmise that there probably were very few jobs, in that vicinity, for a woman of the age of the plaintiff, there was no evidence concerning the opportuni-

ties of either party for employment in the future.

In Moyers v. Moyers (1962), Okl., 372 P.2d 844, this court, in discussing the question of a division of jointly-acquired property, made the following observations:

"In Hill v. Hill, 197 Okl. 697, 174 P.2d 232, it is said:

" 'The duty of the court in making division of property jointly acquired during marriage involves primarily merely the determination on equitable grounds of *the extent of the right of each therein in view of their respective conduct and efforts as the conducive or contributing factors.* Hence the question of need affords no criterion and the matter of personal conduct is material only to the extent it may reflect the existence or non-existence of that endeavor which contributed to the creation of the estate.

\* \* \*

" 'In Tobin v. Tobin, supra [89 Okl. 12, 213 P. 884], we said: 'Indetermining what is equity as to jointly acquired property, the court not only has a right, but should take into consideration the effort of the respective parties during their married lives. Circumstances may arise under which, when the court under this provision of the statute, is called upon to divide the jointly acquired property, that the wife might be entitled to a large per cent of the accumulations, or much in excess of one-half. If it should develop in the trial of the cause that the accumulations have been due to her economy, industry, frugality, and sturdy virtues, which have been a stay to the home and the constant guard of the accumulations, and *at the same time* it should develop that the husband has not been frugal, has not been industrious, has not been sagacious, but, on the contrary, has spent much of his money in riotous living, in gambling, drinking, or associations truant to his marriage vows, it would not be equitable to the wife, under these circumstances, that the husband

should be given half of their property.' " (Emphasis supplied)

In the present case, all of the property in question had been accumulated by the parties prior to the commencement of the defendant's conduct that is involved in the plaintiff's argument, so had no effect upon the accumulation of the property in question herein. The evidence does not disclose any reason why each party should not receive approximately one-half of the jointly-acquired property, and does not disclose how the trial court could have come any closer to that result than it did in its judgment herein.

In Longmire v. Longmire (1962), Okl., 376 P.2d 273, this court held, in the third paragraph of its syllabus, that:

"An action for divorce and division of property is one of equitable cognizance and the judgment of the trial court in such a case will not on review be disturbed by this court unless it be clearly contrary to the weight of the evidence;"

and, in Brewster v. Brewster (1966), Okl., 418 P.2d 692, the court's syllabus states:

"In a divorce action the judgment of the trial court dividing the jointly-acquired property under Title 12 O.S.1961 § 1278, will not be disturbed on appeal unless it is contrary to the clear weight of the evidence."

In the present case, we cannot say from the evidence that the division of property, as made by the trial court, is unjust, unfair, or inequitable to the plaintiff, or is clearly contrary to the weight of the evidence. That portion of the judgment is affirmed.

■ Although the plaintiff does not advance the proposition that the trial court erred in not requiring the defendant to pay a reasonable attorney fee for the plaintiff's attorneys, she does suggest in her briefs that this court should award to her attorney fees in this court as well as in the trial court. 12 O.S.1961 § 1276, before and after the 1965 amendment thereof (12 O.S.

Supp.1968 § 1276) provides, insofar as pertinent herein, that:

" * * * on granting a divorce in favor of the wife or refusing one on the application of the husband, the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper considering the respective parties and the means and property of each. * * *."

In McCoy v. McCoy (1967), Okl., 429 P.2d 999, this court held, in the fifth paragraph of its syllabus, that:

"In making an order concerning the payment of expenses of litigation of the parties in a divorce action in which 12 O.S.1961 § 1276 is applicable, the trial court should consider the parties, and all of the circumstances in the case, including the means and property of the respective parties under the division of property as made or approved by the trial court. In making such orders, the trial court is vested with a wide discretion; and, before this court will reverse such an order, it must clearly appear that the trial court abused its discretion."

As mentioned hereinabove, there was no evidence in the present case as to the means and property of the respective parties, except as to the property acquired jointly by the parties during their marriage, and, insofar as any evidence of the value of that property is concerned, the trial court made a substantially-equal division of that property between the two parties. In the circumstances, we cannot say that the trial court abused its discretion in requiring each of the parties to pay his or her own expenses in connection with the litigation. The plaintiff's suggestion concerning the allowance of attorney's fees for her attorneys is denied.

Judgment affirmed.

All of the Justices concur.