### HUGHES v. HUGHES.

No. 26716.   Oct. 13, 1936.

M. A. Breckinridge, for plaintiff in error.

F. A. Bodovitz, for defendant in error.

PHELPS, J. The defendant husband in the trial court appeals from that part of the judgment awarding a divorce to his wife in which the trial court directed that he pay her $7,200 alimony, at $90 per month, and $25 per month support money for the ten year old son of the parties. No contentions are made except that such award of alimony is excessive and not supported by evidence.

Excepting certain household furniture and royalty interests of negligible value, the decree left all of the property accumulated by the parties in the name of the defendant.

This included the home of the parties, also a 110-acre farm in Rogers county, a lot in an exclusive residential district of Tulsa, two lots at Spavinaw, two lots in Forest Park addition to Tulsa, one and one-half lots in Cedar Crest addition to Tulsa, 340 shares of stock in the Hughes Brokerage Company, 10 shares of Cities Service Oil Company stock, one-half share in the Tulsa Industrial Corporation, certain hay, farm implements, and stock in the Tulsa Building & Loan Association and the Western Union Reseach Corporation.

The question we are considering is whether the award is excessive, taking into consideration the net value of all the property which was retained by the husband, plus his earning capacity and ability to pay, and taking into consideration at the same time the equities existing in favor of the wife arising from the part she played in the accumulation of the estate.

The parties were married approximately 24 years. They had four children, three of whom are adults and self-supporting. When they were married the husband was making about $15 per week. The wife also worked. They managed to buy a small grocery store, mostly on credit. They lived in the back of this store and the wife operated it during the daytime while the husband engaged in his salary job, mentioned above. The store made a profit for the parties, and subsequently they sold it and bought another one, in which they also lived in the rear thereof, the wife operating it during the daytime. From the profits of this and a subsequent store, which they bought and operated in the same manner, they began a brokerage business, with its office in the grocery store. The brokerage business also prospered and eventually, when the wife's health failed, they gave up the grocery store, and after that time the husband continued to accumulate considerable property from the proceeds of the brokerage business. It thus appears from the record that for approximately twelve years, half of their married life, the wife by her own labors played an important part in the actual accumulation of their joint properties. At the time of this divorce their style and manner of living was somewhat more expensive than that of the average family, though it does not appear to have been extravagant.

We first consider the aggregate amount of the award. The defendant contends that the evidence shows his gross assets amount to $13,212 and his indebtedness $10,722. We do not entirely agree. Due to the conflict in the argument as to what the evidence reveals in this particular, we have read the record and have itemized in parallel columns the evaluation placed on each separate piece of property by both sides of the case. We do not feel called upon to itemize in this opinion; it is sufficient to say that there was evidence from which the court was authorized to find that the gross value of defendant's property, exclusive of his interest in the Hughes Brokerage Company, was $16,930, not counting at all the lots in Forest Park, the farming implements and the shares of stock in the Cities Service Oil Company, Tulsa Industrial Corporation, and Western Union Research Corporation. To that $16,930 must be added the value of the interest owned by defendant in the Hughes Brokerage Company.

The Hughes Brokerage Company is a corporation, with an authorized capital stock of $5,000, divided into 500 shares of $10 each. The defendant owns 340 of the authorized 500 shares. It is not clear whether all of the authorized shares have been issued, but we give the defendant the benefit of the doubt on that question. Little direct evidence was adduced on this question, and that which was introduced was highly incredible when considered in connection with the other facts in the case. A stockholder testified that the stock was worth $3 a share and that the whole business was valued by him at $2,500. Nevertheless it is undisputed that for years the defendant, who is the manager and majority stockholder, has drawn a salary of $400 per month from said business. A stenographer is paid $100 per month, which makes $500, and such expenses as rent, office supplies, telephone, telegrams, postage, and incidentals will easily add another $100 to this figure. Thus we have a situation wherein the corporation is able through the years of the depression to pay its manager $400 per month, and spend several hundred dollars additional per month for other expenses, and yet the contention is that the whole business is not worth more than $2,500. Nevertheless, for the purposes of computation, let us assume that the business is worth no more than $2,500. The defendant's interest in the business would then be worth $1,700, which, added to the gross value of the other assets, would make a total of $18,630 gross assets.

The defendant contends that his indebtedness is $10,720. At least $1,500 of this, and probably more, is very questionable. Deducting, however, only the $1,500 item,

would allow him a claim of $9,220 as indebtedness, which subtracted from the gross estate would leave him a net estate of $9,410. But in addition to this net estate we must consider the defendant's actual and existing earning capacity of $400 per month.

Now let us compare the $9,410 net estate and $400 monthly earning capacity with the situation existing in Mosely v. Mosely, 171 Okla. 150, 42 P. (2d) 237, which both parties cite as authority for their respective contentions. Since each case depends on its own facts and circumstances and since both parties cite that case, it will not hurt to compare the facts, circumstances, and award in that case with the same here. In that case (a) the final award was $6,000, while here it was $7,200; (b) the net assets there were $1,500, while here they are at least $9,410; in addition to the alimony, the plaintiff was granted other property valued at $8,750, while in this case the plaintiff was granted no property at all; (c) in that case the plaintiff's contribution toward accumulation of the estate was merely valuable "as a wife" (171 Okla. 150, 42 P. [2d] 238, while here her contribution was of an active nature separate from her status as a wife; (d) the plaintiff was awarded the home, while here the defendant was awarded the home; (e) the defendant, making $400 a month, was to lose his job within 30 days, while here there is the same salary, but there is no such indication. From the foregoing it appears that a comparison of the facts in the two cases indicates that the award in the instant case is far from excessive. But aside from such comparison, we are of the opinion that the value of the defendant's estate, and his excellent earning capacity, will afford him a reasonable means of complying with the decree, which is no larger than the plaintiff deserves.

On the question of the extent of the monthly installment payments of $90 to the wife and $25 for the son: We think the total, $115, is not too much out of a monthly income of $400. It is true that the defendant probably has monthly interest payments to make, and upkeep expenses, but we must remember that back of the salary and earning capacity is an estate of no mean value in itself, a part of which or the income therefrom may be used to augment the net from the salary. If the ability to pay this award were limited to consideration of only the defendant's net income, it would amount to the same as shunting the defendant's tangible and accumulated estate entirely from view.

Though the terms are sometimes used synonymously, there is a difference between alimony and division of property. In the instant case the trial court correctly treated the award as a division of property jointly accumulated by the parties. Section 672, O. S. 1931, providing for an equitable division of the property in such instances, does not necessarily mean an equal division. Tobin v. Tobin, 89 Okla. 12, 213 P. 884; Winslow v. Winslow, 156 Okla. 260, 10 P. (2d) 666.

Viewing the case as a whole, we are unable to say that the award was excessive, either on its own merits or by comparison with other cases, in the light of the evidence adduced, not all of which has been set forth herein.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and WELCH and CORN, JJ., concur.