MATHEWS v. MATHEWS.

*96 P. 2d 1054.*

No. 28869.   Oct. 31, 1939.

Rehearing Denied Nov. 28, 1939.

Application for Leave to File Second Petition for Rehearing Denied Dec. 19, 1939.

Henry R. Duncan, of Tulsa, for plaintiff in error.

Yancey, Spillers & Bush, of Tulsa, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Tulsa county, entered in a divorce action under which the wife was allowed a sum in gross payable in installments as permanent alimony by the husband, who had no property, upon consideration of the husband's future prospects as to earning capacity and acquisition of property. The principal question is whether such a judgment can be rendered in view of section 672, O. S. 1931 (12 Okla. St. Ann. § 1278), which provides:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage and not previously disposed of, and shall be allowed such alimony *out of the husband's real and personal property as the court shall think reasonable,* having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof. In case of a finding by the court that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper." (Italics ours.)

The defendant, plaintiff in error herein, takes the position that by virtue of the foregoing statute, permanent alimony can only be allowed against a husband who is possessed of property (real or personal), and then not in excess of the value of the property by him possessed, since, as the defendant contends, such allowance must in all cases be out of his property.

The position, if sound, precludes the

allowance of alimony based upon earning capacity, present or future, and the consideration of that element in all cases where the husband does not possess an estate. It would also restrict the consideration of earning capacity, in cases where an estate is possessed by the husband, to a determination of what portion of the estate should be allowed as alimony.

While the amount of alimony to be allowed has frequently been a subject of dispute in this court, and we have often discussed various elements properly cognizable in determining the computation thereof, the question here presented does not seem to have previously been approached from the standpoint of the literal meaning of language employed in the statute under which permanent alimony is allowable.

We have, on various occasions, stated that the earning capacity of the husband is a proper element to be taken into consideration in determining the amount of alimony. See Fisher v. Fisher, 116 Okla. 129, 243 P. 730; Fowler v. Fowler, 61 Okla. 270, 161 P. 227; Hughes v. Hughes, 177 Okla. 614, 61 P. 2d 556. And in the practical administration of the law, it appears that alimony awarded has exceeded the net value of the husband's estate. Moseley v. Moseley, 171 Okla. 150, 42 P. 2d 237; Hughes v. Hughes, supra. See, also, West v. West, 114 Okla. 279, 246 P. 599.

The foregoing cases and others of similar import indicate that the bench and bar of this state have acquiesced in a construction of section 672, O. S. 1931, supra, which does not attribute to the language therein used the effect of a limitation depriving the court of the authority to grant alimony in excess of the value of the property (real and personal) of the husband. While the practical construction of a statute long acquiesced in does not impel the adoption of a view contrary to the intent of the Legislature as expressed by the language employed, it does have great weight in determining the construction to be adopted if the statute is susceptible of the construction long acquiesced in by

the legal profession. As we said in Sheridan Oil Co. et al. v. Superior Court of Creek County et al., 183 Okla. 372, 82 P. 2d 832, as follows:

"Acquiescence in a given construction of a statute is entitled to great weight even if it has not been participated in by the judiciary. League v. Town of Taloga, 35 Okla. 277, 129 P. 702; McCain v. State Election Board, 144 Okla. 85, 289 P. 759. See, also, Bayless v. Kornegay, 163 Okla. 184, 21 P. 2d 481. Greater reason would seem to exist for such consideration when the judiciary itself has participated in the construction."

Is the statute susceptible of a construction different than that urged by the defendant herein, and in accord with the construction heretofore prevailing in this jurisdiction? The answer to this question must be in the affirmative.

The statute in question has long been a part of our law. It appears as section 4550, Statutes 1893. In passing through the revision of 1910, it was changed in matters not material to this controversy (sec. 4969, R. L. 1910, and revisor's note). It was adopted from Kansas, which jurisdiction still retains the features material to the question herein presented. The Kansas Supreme Court, since our adoption of the statute, has declared on the precise problem now before us.

In Nixon v. Nixon (Kan.) 188 P. 227, it was said in the syllabus:

"Although the statute (Gen. St. 1915, sec. 7581, Code Civ. Proc. sec. 673) provides that the wife shall be allowed alimony 'out of the husband's real and personal property' where a divorce is granted by reason of his fault, his earning capacity is a matter to be taken into account, and he may in a proper case be required to pay permanent alimony beyond the value of his estate at the time the marriage is dissolved."

Because of the precise analogy, we also quote at length from the body of the opinion. It is therein said:

"The language of our own statute, if construed somewhat literally, might seem to lend color to the appellant's contention. It reads:

" 'When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to

her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before her marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the property which came to him by marriage and the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money, payable either in gross or installments, as the court may deem just and equitable.' Gen. Stat. 1915, sec. 7581.

"Inasmuch as the allowance to the wife, although called alimony, is spoken of as being made 'out of the husband's real and personal property,' there is room for the argument that his capacity for future accumulation—his present earning power—is not to be taken into account. The real reason for the use of the expression quoted, however, was doubtless to indicate clearly that the amount allowed as alimony should be taken from the husband's own resources; that it should be deducted from his share of the property (real as well as personal) after it had been divided, and not from the common fund before division. It has been said in a case arising under a statute essentially similar in the respect referred to:

" 'We should be very unwilling to adopt a construction of the statute which would exclude the wife, upon divorce, from all right to support from the income of the husband at the time of divorce or from his estate subsequently acquired. There may well be cases in which the actual estate of the husband, at the time of divorce, may be nominal only, and his income ample; cases in which the husband, without adequate estate or income, at the time of divorce may afterwards acquire competent estate or income, or both. During coverture the wife would be entitled to support out of these; and we do not understand that upon divorce she should lose her right. The statute clearly recognizes the continued claim of the wife to support from her husband, notwithstanding the divorce, except in case of her adultery. It is admitted that the statute provides for it out of any estate possessed by the husband at the time of divorce; it is denied only as to his income. If the power to provide for the wife out of the husband's income were wanting in the statute, when his estate is inadequate and his income adequate, it would evidently be a casus improvisus —an oversight in the letter of the law, against its spirit and intention.' Campbell v. Campbell, 37 Wis. 206, 213.

" 'Our statute of divorce recognizes the natural tie and consequent obligation, and proceeds upon them, in providing for the claim of the wife, founded in marriage, to support from the husband after divorce. We cannot regard it as a hard provision, but as a remedial and beneficent statute, for protection of natural claim founded on natural relation. And we shall not confine it to the narrow application contended for, against its spirit and intent, if the language used be fairly susceptible of larger and more liberal construction.' Id., pp. 214, 215.

" 'The estate intended in section 24 must be understood as an estate applicable to the payment of alimony. The words "estate" and "alimony" in the section are not only associated within the rule noscitur a sociis to be understood in a kindred sense; they are correlatives, dependent one on the other for effect, and should be understood in a corresponding sense. We are not considering division of estate, but alimony proper. The correlative estate must be intended as an estate available to the payment of the correlative alimony. This seems to disregard actual estate not yielding income, and implies income however accruing, whether from estate proper, or employment, or both.' Id., p. 218.

" 'We have therefore no difficulty in holding, on principle and authority, that alimony may always be based on the husband's income, at the time of divorce and afterward.' Id., p. 219.

"The same interpretation of the phrase 'the husband's estate' has been thus indicated:

" 'But while alimony is commonly defined (as) a proportion of the husband's estate, yet the duty of a husband to maintain his wife does not depend alone upon his having visible tangible property. While the parties are living together, they are bound to contribute by their several personal exertions to a common fund, which in law is the husband's, but from which the wife may claim support.

If she is compelled to seek a divorce on account of his misconduct, she loses none of her rights in this respect, only she is to draw her maintenance in a different way; that is, under a decree for alimony, based, if he has no property, upon his earnings or ability to earn money.' Bailey v. Bailey, 21 Grat. (Va.) 43, 57, 58."

See, also, Francis v. Francis (Kan.), 194 P. 641; Gerlecz v. Gerlecz (Kan.) 230 P. 1032.

We deem it unnecessary to amplify the views so clearly stated by the Kansas court. In view of the decision of that court upon the precise question, the construction long acquiesced in by the bench and bar of this state, our own previous expressions upon the factors properly cognizable in allowing alimony, and the prevailing view in other jurisdictions (Annotation 6 A. L. R. 192), the contention of the defendant will be denied.

It is also contended by the defendant in substance that, in view of the circumstances in this case, the judgment for alimony is excessive. A determination of this question requires a further analysis of the fact situation.

Plaintiff and defendant were married December 5, 1936, and of this marriage one child was born. The marriage took place immediately preceding the birth of the child. At the time of their marriage plaintiff was 16 years of age, defendant 17. Defendant was attending high school at the time. After their marriage plaintiff lived with the defendant at his parents' home a short time, but was forced to leave. Since then, except for a short interval during which plaintiff lived with her sister, plaintiff and her child have made their home with her parents.

The evidence reveals that after plaintiff and the child were forced to leave the home occupied by defendant and his parents, defendant contributed $25 per month, for support of her and the child, for four or five months after their marriage. Thereafter, until this action was brought, this sum was reduced to $15 per month. All the money contributed to plaintiff was advanced by defendant's father, defendant being engaged in attending school and being without re-sources. However, defendant did have the expectancy of inheriting three Osage headrights. At the time of the trial, defendant had no employment or any source of income, but had made preparations to attend college.

After hearing the evidence the trial court granted the plaintiff a divorce and custody of the child and ordered defendant to contribute $20 per month toward support of the child, and further rendered judgment against defendant for alimony in the amount of $1,000. Evidently in recognition of the defendant's commendable desire to complete his education, the court ordered the alimony to be paid in monthly installments of $200, the payments not to begin until September 1, 1943. The court further ordered defendant to pay $17 medical expense and $50 attorney fees to plaintiff's attorneys.

It is apparent that the marriage was consummated primarily to prevent the stain of illegitimacy from blemishing the child's future. The defendant has shown no disposition to repudiate his obligation to the child. His complaint herein is directed solely at the alimony portion of the decree. While he has the prospect of acquiring property by future inheritance, that possibility is by no means certain, and it is quite probable that such contingency, if it does occur at some future date, may not result prior to 1943, when the $200 monthly payments begin to fall due.

In Dresser v. Dresser, 164 Okla. 94, 22 P. 2d 1012, we said:

"There is no rule of law requiring any fractional part of so-called joint accumulations, or of the husband's separate property, to be set apart or allowed to the wife, or payments of money, in gross or installments, to the wife, upon divorce awarded her for the husband's fault, as each case depends upon its own facts and circumstances, a m o n g  w h i c h are: Whether the property is his separate property, or a joint accumulation, and even if the latter, whose efforts principally resulted in its accumulation: duration of married life; whether the marriage be a marriage of affection or whether circumstances point to a marriage wholly or partly of convenience; wheth-

er the wife be somewhat at fault, and provoked ill treatment; the respective financial worth of the parties; and their conduct respectively as to frugality or wastefulness during the married life."

In view of the circumstances of the case, the duration of the marriage, the youth and want of property of the defendant, the improbability that he will acquire property by inheritance for years to come, and his continuing obligation to the child, we are of the opinion that the alimony allowance should be reduced to $500 and that the same be made payable in monthly installments of $25 per month, payments to begin at the time specified in the judgment now before us. Upon authority of Stott v. Stott, 122 Okla. 266, 254 P. 722, the decree is modified to correspond to the views above expressed. In all other respects, the judgment is affirmed.

RILEY, OSBORN, GIBSON, and HURST, JJ., concur. WELCH, V. C. J., and DANNER, JJ., dissent. BAYLESS, J., absent. CORN, J. (specially concurring). I concur in that portion of the opinion upholding the power to award alimony, but dissent from that portion reducing the amount allowed.