Bernice T. GARDNER, Appellee,

v.

Justin C. GARDNER, Appellant.

No. 53377.

Court of Appeals of Oklahoma,
Division No. 2.

Feb. 24, 1981.

Rehearing Denied April 3, 1981.

Certiorari Denied May 18, 1981.

Released for Publication by Order of Court of Appeals May 21, 1981.

James W. Bill Berry, Berry, Baron, Berry & Clark, Oklahoma City, for appellee.

Karen A. Pepper Mueller, Carson, Trattner & Weaver, Oklahoma City, for appellant.

BOYDSTON, Judge.

The parties to this appeal had been married more than 30 years and had accumulated a substantial estate, at least partly through gifts from the husband's father.

Plaintiff wife filed suit for divorce on August 26, 1977; the divorce was granted by agreement after last minute pre-trial negotiation and settlement on July 24, 1978. The parties reserved only the issues of who was to pay attorney's fees and expenses of litigation and a hearing was held on these issues before the court on January 22, 1979 at which time defendant husband was ordered to pay the following expenses:

| | | |
|---|---|---|
| 1. | Deposition costs | $1,364 |
| 2. | Court costs | 25 |
| 3. | Court Reporter fees | 45 |
| 4. | Gordon Toben | 230 |
| 5. | Dr. Russell Allen | 360 |
| 6. | Juanita C. Brown, Appraiser | 250 |
| 7. | Appraisal fees to Woody Hunt (with interest thereon) | 5,200 |
| 8. | Accounting expenses | 12,000 |

In addition the court found plaintiff's attorney had earned an attorney fee of $32,500 of which the defendant husband was ordered to pay $24,000.

From this order "apportioning" and setting fees and expenses of litigation, the defendant husband appeals raising three issues:

(1) The court erred in requiring the defendant husband to pay wife's legal expenses which included duplicated, ineffectual, wasted effort and, in effect, "time building" on the part of plaintiff's attorney;

(2) The court erred in not requiring plaintiff to pay her own attorney's fee and expenses since her part of the estate amounted to more than $700,000;

(3) The final agreed settlement was nearly identical to that which had been previously offered by defendant seven months earlier an after such offer all additional expenses should have been borne by plaintiff.

The substance of defendant husband's appeal and argument is that the court unjustly rewarded plaintiff's attorney for unnecessarily and arbitrarily protracting and churning the litigation at the expense of the defendant husband. In effect, the claim is that most of the expenses incurred were unnecessary, duplicitous and arbitrary and therefore the husband should not have to pay for them. The husband further argues that since the wife was awarded more than $700,000 as her part of the marital estate, she was financially able and therefore should be required to pay her own attorney's fees.

The wife counters by claiming that at the time she employed her attorney, the husband had taken the position that even though they had a net estate in excess of 1.7 million dollars, only $3,000 of the estate had not been derived from gifts from his father. Therefore, presumably, the net estate subject to marital division was $3,000. Thereafter, her attorney secured for her a settlement in excess of $700,000.

The record reflects more than six pages of single-spaced minute entries and a voluminous court file which included applications for citations for contempt of court. This record, standing on its own, is a strong indication of a highly contested divorce action. The divorce was not granted for almost a full year after it was filed and according to plaintiff's attorney, who testified at the final hearing on the expenses of the divorce, more than 200 hours of preparation and consultation went into plaintiff's case even though the trial was obviated by a last minute settlement.

The record shows that the business dealings of Mr. Gardner were, to put it mildly, extremely complicated, intricately and delicately interwoven with the business of his father and various partners who dealt in fractional interests in real estate in and around Oklahoma City. It is equally apparent that at the start of litigation the wife knew very little about her husband's business and financial holdings.

It should be noted that husband's accountant furnished detailed accounts, appraisals, balance sheets and other financial data to the wife's attorney and accountant. It also appears that the proposed settlement offer made to the wife on January 10, 1978 was substantially equivalent to the final, agreed settlement.

It should also be noted that throughout the litigation, the husband was living under the very real and expressed threat that his allegedly immoral extramarital conduct would be brought out in court.[1]

Since the three issues raised on appeal are so interrelated and inseparable, they will be treated as one. These issues go mainly to the discretionary power of the court to award attorney's fees to the wife when she has ample means to pay them herself. It is to this discretionary power that we intend to focus our attention.

In order to determine whether the discretionary power of the court was properly exercised and whether the award of attorney's fees and expenses in this case was just and proper it is necessary to review the statute under which these expenses were granted, authorized and ordered to be paid.

Title 12 O.S. § 1276 (1976) provides, in part:

> [A]fter a petition has been filed in an action for divorce ... a judge ... may make and enforce an order ... for the support of the children and support of the wife or husband during the pendency of the action ... and may also make such order relative to the expenses of the suit as will insure an efficient preparation of the case; and, *on granting a divorce in favor of the wife or the husband, or both, the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper*

---

1. Part of the fees and expenses husband was ordered to pay was for the cost of depositions of three so called "lady friends" of Mr. Gardner.

*considering the respective parties and the means and property of each* .... (emphasis ours)

The issues raised by the husband must be measured against this recently amended statute in order to ascertain whether the trial court abused its discretion.

It appears to us that the actual practice of the bench and bar is, almost without exception, to interpret this statute to mean that in almost every conceivable circumstance the principal provider is required to pay *whatever* expenses are incurred by the non-provider *in addition* to whatever property she has been awarded by the trial court. Almost universally the provider is the husband.

This habitual interpretation is applied by the courts under the guise of "judicial discretion," which in practice is no discretion at all. If the practice is not prohibited, it may receive such an independent stature that the expressed intent of the legislature in this area will be altogether forgotten.

We recognize that in many cases the wife has no income producing capacity and has spent a great part of her life caring for the home, children and the husband's personal needs. This is not to minimize the importance of her role as the social provider. But in most cases where there the marital assets are substantial, the wife is, correctly, awarded a substantial share of the marital estate and, in proper cases, support alimony. What we must address today is the fact that almost invariably, *regardless* of how much property she has been awarded, *regardless* of the size of the estate, the courts have construed, rather chauvinistically we believe, that the wife is entitled somehow to achieve some special status in this particular form of litigation by being permitted to extract a financial premium over and above her fair share of the estate in the form of fees and expenses.

One very important potential area of abuse created by this form of judicial excess is that it provides an area wherein the wife's attorney is given unusually wide latitude and discretion in how much time he will devote to the divorce. It literally gives her attorney the equivalent of a blank check to "build" his side of the case with none of the usual attorney-client restraints. His client is not, in the majority of cases, going to pay the expenses. In all other litigation where a party, other than the client, is required to pay attorney's fees and expenses, both sides are constrained to spend the time and expenses reasonably dictated by the facts and circumstances of the case. This is true for the simple reason that fees and expenses are awarded to the *prevailing* party. In those cases where the client is required or may be required if he loses, to pay his own attorney's fee he knows within reason how much time his attorney has been authorized to expend and he is in a position to see how much of that time is going to be productive or is most likely to be productive. He further has the right at the conclusion of the case to require a detailed, personal explanation of the fees. He has first hand knowledge of time spent in conference, of time expended going over records, etc., and has the right to challenge any aspect of the fee to be charged in an ordinary, business-like manner.

In a divorce there is no prevailing party, only a custom and practice that fees and expenses will, in most cases, be awarded the wife. This occurs even though the productive years of both parties may be over. The attorney has no incentive whatsoever to either keep time records or to justify in any particular way the effort and time expended. His client, not being liable for the fee, in most cases, does not even care how much the other party is required to pay. Indeed, this can become another one of the painfully unjust lashes which can be applied to the back of an already financially burdened and spiritually depressed litigant.

Prior to the amendment of title 12 O.S. § 1276 deleting all references to "fault" most lawyers and judges considered fault a criterion in awarding fees, granting alimony and dividing the marital estate. Consequently, lawyers were remiss if they failed to sift meticulously through all the avenues available to them to find a basis of "fault." One side effect of this effort, incidentally, was to achieve another nonjudicial objective of the client, that is, to punish the offending party. However, since "fault" has been

deleted as a criterion, the courts have a splendid opportunity to set forth guidelines within which some semblance of financial fairness can be achieved, at least in the area of the setting of expenses and attorney's fees in divorce cases.

The case before us is a glaring example of the sometimes valid complaint of the public as to the potential for abuse extant in this type of litigation. When viewed from the standpoint of the husband, he has been required to pay more than $700,000 to a wife who no longer desires to be married to him. Additionally, he has been ordered to pay more than $40,000 to her attorney and the experts she and her attorney hired. From his standpoint, the attorney did nothing more than check records that were furnished by his own accountant, and hire the wife an accountant who spent more than $12,000 in time reviewing the same records and arriving at virtually the same conclusions submitted by his accountant. To add insult to injury, wife's attorney spent more than seven months rehashing and debating an offer which was eventually accepted almost intact. She spent more than $8,000 on appraisers to reappraise property which had already been fairly appraised by the husband's own appraisers.

We believe that the legislature made its pronouncement in this area by amending 12 O.S. § 1276 and intended this to be interpreted literally by the courts. We do not believe that they intended the amendment to be used as a judicial mandate to award the wife, in every instance, her attorney's fees and expenses. The legislature simply left the door open for the courts to make those awards where they were justified by the circumstances of a particular case, for example, where it would work a material hardship on the wife to pay for these items herself.

It could hardly be considered a material hardship for a woman awarded in excess of $700,000 to have to pay for her own attorney's fees and costs of litigation.

It seems to us that this is precisely the type of case where the greatest amount of abuse is possible and therefore is a proper case out of which new, more equitable guidelines may be formulated.

We hold that the court abused its discretion in this case. Had the trial court intended that the settlement, which in this case was reached by private agreement, was to be a net settlement of $700,000 *plus* the attorney fee, in other words a $740,000 settlement, then we believe that he should have so declared and justified it by the facts and circumstances contained in the case. However this is not what the court held nor is it what trial courts, in general, have been holding. In almost every case the exercise of judicial discretion in the awarding of fees and expenses allows the wife be paid an additional *bonus* for the work of her attorney and her experts.

It is obvious that many cases involving large sums of money involve countless hours of legal work and the use of valuable expert testimony in order to *efficiently*[2] prepare the case. We believe the expenses incurred in this case were not necessarily abusive as to necessity or amount, but that is hardly the point.

A better rule would be that where there is substantial property available, and where both parties reasonably litigate their problems in a divorce case and reasonably expend money and time to efficiently prepare their case, that each party should be required to pay their own attorney's fee and expenses of litigation. Further, we believe that this will encourage each party to conduct his side of the case in a more reasonable and fair manner. If each party knows that he is potentially responsible for his expenses where he has acted arbitrarily, capriciously, or where he has unduly protracted or "churned" the litigation, he will be far less likely to behave in such a manner.

Further, the parties will be far less likely to arbitrarily delay the ultimate day in court by the threatened or actual use of unlimited financial whips, in the forms of unnecessary continuances, questionable use of legal devices, and excessive use of experts.

2. Title 12 O.S. § 1276 (1976).

■ We further believe that the type of potential abuse alleged in this case should be dealt with squarely at the trial level. If, for instance, a party has unreasonably ignored the appraisals furnished by the other party and has hired their own independent appraisers that party should be required to pay any expenses incurred thereby.

In some instances it can be fairly argued that even though the husband has furnished appraisals, financial records, books and accounts to the attorney for the wife, that it was incumbent upon her attorney to go over these books in great detail and even to hire experts in order to verify or explain the documents which were beyond the expertise of the attorney or the client. There is no question but that the expenses incurred for that purpose are necessary and serve to protect the party who requests the verification. However this should not mean that that party should be relieved of the burden of paying to have this done in all cases. There is a vast difference between a person who is prudently hiring assistance in verifying records and one who is arbitrarily heaping financial coals on the head of the other because they are simply in a position to do so without having to pay for it.

Therefore, we hold that where, as in this case, there are sufficient funds and property to pay attorney's fees, then each side should pay their own attorney's fees and expenses of litigation.

■ Judicial discretion would only come into play where there is no substantial marital estate or where the property awarded to one party is of a nonliquidable nature or where there is a finding by the court that any part of the expenses of litigation was caused by arbitrary and capricious conduct on the part of the other and that this conduct has unduly increased the overall cost of litigation. In that event, the offending party should be surcharged to the extent that this has occurred.

■ Therefore, we reverse this case and instruct the trial court to enter an order requiring each party to pay their own costs of litigation for the original proceeding and for this appeal.

■ It should be noted further that the journal entry entered by the court is defective in several ways which have apparently come into vogue over the last few years. In particular, we refer to the trial court's order purporting to set an attorney fee in the amount of $34,500 for the wife's attorney. We are aware that he probably was "setting" this fee for the purpose of apportioning part of it to the husband. However, it would most likely be construed by an unwary client to be a judgment in favor of the attorney against the husband. It should be made very clear in the decree that the court's determination "setting" the fee at $34,500 is in no way legally binding on the client as between that client and the attorney and does not serve to replace any contractual arrangements previously made. It is elementary that no valid judgment can be rendered in this manner. It is further the opinion of this court that the trial court has purported to award a judgment against the husband in favor of persons (appraisers, court reporters and accountants) who were not even parties to the lawsuit. The journal entry appears to reflect that the court has ordered the defendant to pay these parties directly for their services, which is highly irregular and improper in that none of them were parties to the lawsuit and no legal issue was raised as between these third party experts.

In the future, the journal entry should reflect the fact that such payments, when allowed, are obligations running from one litigant in favor of the other and are solely for their use and benefit in paying such sums. It should not imply as granting of judgment in favor of a person who is not otherwise a party to the lawsuit.

BACON, P. J., and BRIGHTMIRE, J., concur.