Elizabeth Anne BOWMAN, Appellee,

v.

Byrne Arnold BOWMAN, Appellant.

No. 53767.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 20, 1981.

Rehearing Denied Nov. 17, 1981.

Certiorari Denied Dec. 21, 1981.

Released for Publication by Order of Court of Appeals Dec. 23, 1981.

---

Irven R. Box and William S. Murphy, Jr., Oklahoma City, for appellee.

Robert W. Pittman, Oklahoma City, for appellant.

BOYDSTON, Judge.

Both parties to divorce judgment appeal alleging the trial court erroneously divided the marital estate. We have examined the record and reverse.

Plaintiff Wife, 55-years-old, married defendant Husband, 73, in May, 1977. She filed for divorce on October 19, 1978.[1]

## HER CIRCUMSTANCES

At time of marriage, Wife had been employed by the FAA for 17 years, earning $23,115 annually. A gifted linguist, she earns an additional $10 per hour as a private interpreter. She owned her own home valued at $33,000, a car, furnishings and had $1,000 in savings. She continued to work for the FAA during the marriage.

She has three adult children by a prior marriage, none of whom are married. Her two daughters are partially disabled by a neurological disease; the son, to whom she furnishes regular support, is a student at Oklahoma University. One daughter is supported by her father; the other receives social security benefits.

After the marriage Wife deeded her home to herself and one of her daughters as "joint tenants." Her reason for doing so was to lower taxes (homestead exemption) and provide a comfortable place for daughter to live. When the newly married couple combined their furniture, Wife gave her daughters a television set, washer-dryer, vacuum cleaner, etc.—everything they had "two of."

## HIS CIRCUMSTANCES

Defendant Husband has engaged in the general practice of law for more than 50 years and was still active in the profession at time of trial. Before the marriage he owned two pre-1972 cars, an unmortgaged home purchased in 1974 for $75,000 to which he made premarital improvements of $11,000, and several certificates of deposit which total $100,000 "saved over a lifetime" which is his personal retirement fund. He currently earns $40,000 before taxes of $17,000 per year. He also has adult children.

## THE MARRIAGE

During the marriage, each partner continued to work. Each kept separate bank accounts, neither accounted financially to the other and each filed separate income tax returns. He paid all expenses, bought some of her clothes, paid her $900 tax difficiency for 1977, paid for numerous trips abroad and within the United States, and paid for the cleaning lady, groceries and all utilities. He entertained her generously, attending formal dances, parties and social functions. As far as the record shows, the only marital problem was a seemingly minor incident which involved one of the disabled daughters.[2] Wife later moved out peaceably, and filed suit for divorce.

## THE TRIAL

At trial, the court permitted testimony from Woody Hunt, an appraiser. He testified over objection that Husband's house

[1.] The petition prayed for divorce on the grounds of incompatibility alleging there was no jointly acquired property. She did not request temporary support pendente lite or permanent alimony. Her attorney offered to settle for a $250 attorney fee plus court costs. Husband prepared the journal entry and sent it to him. Wife then demanded an additional $508 for moving expenses. Husband again agreed and sent cashier's checks and a revised journal entry. That was the last time Husband heard from Wife or her attorney until the pretrial conference, at which time her intention to seek property division, alimony and additional attorney fees was orally declared. She and her attorney simply cashed the checks and reneged on the settlement. Wife was permitted to orally amend the petition after trial to conform to the proof.

[2.] The daughter came to the house with her lunch, called her mother at work, became angry at the mother, then left the house without replacing the receiver on the phone. When Wife told Husband about it, he called the daughter and told her not to come over unless "she conducted herself like a lady."

was worth:

| | | |
|---|---|---|
| May, 1977 | at time of marriage | $ 86,275 |
| October, 1978 | at time divorce was filed | 107,100 |
| May, 1979 | at time of trial | 150,000 |

He testified the increase in value since May, 1977, was due solely to inflation. Wife did not pay for any repairs or improvements. In fact, none were made during the marriage and the home remained mortgage-free.

During the marriage Husband continued to add $7,000 per year to his retirement fund. The judge found he "saved" $14,000 during the entire two year period.

Wife freely admitted she still owned her home but preferred not to move in with her daughter though there was plenty of room; she still had her job and government retirement benefits; she could retrieve her television, vacuum cleaner, washer-dryer, etc., but preferred not to ask for their return because her children needed them; and, she had a 1976 car.

She testified the numerous trips and social activities during the marriage caused her to spend $2,000 of her own funds to buy new clothes including underwear, shoes, dresses, and a formal gown. According to her the $2,000 is the only money she spent or accounted for during the marriage which could be remotely construed as spent for the common good of the couple.[3] She made no attempt to account for her salary except that it all went to the benefit of her children.

## PROPERTY DISTRIBUTION

 Trial court granted divorce to Wife on grounds of incompatibility and made the following award of property:

### TO WIFE

$10,412 — "[p]ermanent alimony in lieu of division of property of the parties." This represents half the inflationary increase of his home value.

5,000 — "[p]ermanent alimony in money award, in lieu of property division." This is approximately half the increase in his retirement fund.

5,000 — "[p]ermanent alimony as and for support, which said support has accrued." This amount is "accrued" support pendente lite.

1,750 — attorney fees. "[s]aid attorneys are given a personal judgment against the defendant."[4]

### TO HUSBAND

Husband received his personal effects, his clothing, his home (subject to the alimony lien), his furniture and presumably those retirement funds which were not otherwise dispatched as alimony by the court.

### I

The trial court has wide discretion in dividing property and awarding alimony. *Kiddie v. Kiddie*, Okl., 563 P.2d 139 (1977). The appeals court will not set the judgment aside nor substitute its judgment for that of trial court absent a clear abuse of discretion. *Peters v. Peters*, Okl., 539 P.2d 26 (1975). After weighing the evidence, we find the trial court clearly abused its discretion in several ways.

### INFLATIONARY INCREASE IN HOME VALUE

 Title 12 O.S.1976 Supp. § 1278 requires the court to:

"[e]nter its decree confirming in each spouse the property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his or her own right."

The increase in value of separate property is not even an issue except where coupled with proof of: (1) significant repairs which materially enhance life expectancy of asset; (2) improvements made which materially contribute to increase in value; and (3) material increase in equity since marriage. In all cases the value increase is only pertinent when attributed to expenditure of either jointly acquired funds or separate funds of party claiming the right to property division of the asset. *Moyers v. Moyers*,

---

3. The only exception being that she paid the housekeeper once.

4. This purported personal judgment in favor of attorney is erroneous. All judgments run in favor of litigants only. *Gardner v. Gardner*, Okl.Ct.App., 629 P.2d 1283 (1981).

Okl., 372 P.2d 844 (1962). In no event should the increase in value attributed to inflation be divided by the court as "jointly acquired property."[5] The present value of separate property is only material as a financial circumstance to determine whether owner is financially able to pay support alimony.

 The division is erroneous for other reasons as well. All Husband has, basically, is a home, two used cars, a retirement fund and an after-tax income of $23,000 per year. Because of the utilitarian character of a home, this asset is not normally considered "disposable," that is, an asset which when liquidated need not be replaced. It is virtually a dead asset. As such, its inclusion in the marital financial equation to determine alimony matters should be avoided except under the most compelling circumstances.

In this case Husband's home was not for sale. Even if it were, recent experience indicates though inflated values look good on paper, they are relatively meaningless unless there is a buyer who can afford to pay the inflated price and is willing to pay the current inflated interest. Having cleared this hurdle, the seller then is required to pay larger closing costs which further diminish the hypothetical and usually illusory inflated value. In this case, Husband offered proof a sale would net him only $100 over his $86,000 investment.

None of these facts were considered by the trial judge who would have Husband either sell his home or mortgage it so that Wife will not have to inconvenience her daughter by moving in with her. We find no factual, legal or equitable basis for this award and delete it from the judgment.

## II

 Trial court awarded Wife $5,000 as permanent alimony in lieu of property divi-sion. Trial transcript indicates the source of this fund is the increase in Husband's retirement savings.[6]

We find this fund is not subject to property division. Likewise, any ordinary increase in value, including usual and ordinary contributions, are not jointly acquired property or subject to property division. This asset, to a 73-year-old, self-employed person is indistinguishable from a company pension program to a salaried employee. Similar to "separate property," it may be taken into consideration as a financial fact of his circumstances in resolving matters of support alimony, but it is not subject to division where it was accumulated strictly out of the labor and earnings of Husband. The same is true for Wife, who in this instance has a retirement fund with the government.[7] Baker v. Baker, Okl., 546 P.2d 1325 (1975).

## III

 Next, the trial court awarded Wife $5,000 "[p]ermanent alimony as support which said support has accrued." The trial judge gratuitously awarded this sum as retroactive support pendente lite. The award was neither requested in the pleadings, before or at trial, nor justified by the evidence. Such temporary support is only authorized by 12 O.S.1976 Supp. § 1276 which provides:

> After a petition has been filed for divorce and alimony, or for alimony alone, the court . . . may make . . . such order . . . for . . . the support of the wife or husband . . . as may be right and proper.

We find temporary support to be a pretrial matter which may not be awarded retroactively at trial where both parties were personally under the jurisdiction of the court throughout the pendency of the action. However, even if it were appropri-

5. The exception would be where there is joint ownership; and, then the property could be subject to division only to the extent of inflationary increase attributable to the separately owned fractional share. May v. May, Okl., 596 P.2d 536 (1979).

6. The record is vague, but trial court found Husband saved $14,000 in two years by adding to his retirement account in the same manner as he had prior to the marriage.

7. From an actuarial standpoint, it is doubtful that Husband's private retirement funds equal that of Wife's, yet the trial court gave no correlative consideration to her pension funds or contributions.

ate, there is no testimony Wife needed such support in this case. She continued to earn a significant salary, owned her own home and car and suffered no hardship or diminished living standard during the seven month pendency of the divorce. On the contrary, she asked for and immediately received ,voluntary payment of the $508 moving expenses she incurred plus a $250 attorney fee.

## IV

■ Husband next complains that the attorney fee awarded Wife is excessive. We agree, finding that all contested issues raised by the attorney were unsupported by the law and amounted to an unnecessary thrashing of illusory issues which caused a needless protraction and churning of the litigation. We find no evidence that Wife cannot pay her own attorney fee. This issue is subject to proof the same as any other issue. In this case, Wife earns in excess of $23,115 per year. Husband has voluntarily paid $250 toward her attorney fee and we deem this to be sufficient, considering the means and circumstances of the parties. *Gardner v. Gardner*, Okl.Ct. App., 629 P.2d 1283 (1981).

## V

Next we consider the cross-appeal of Wife, who asks that her total award be increased to $41,250. Her argument is based solely on the increase in value of Husband's home due to inflation. We find this argument to be unsubstantiated.

## VI

Having come thus far, and having reversed every significant part of the trial court's property division and alimony judgment, we feel it incumbent on us to adjudicate the issue of whether the evidence warrants a support alimony award at all. *Bewley v. Bewley*, Okl., 266 P.2d 436 (1953). We note the trial judge erred significantly in such a way as to clearly reveal his personal sympathy with Wife's plight. We are not unmindful of the background facts presented here which reveal the continuing financial and emotional burdens created for her by the crippled daughters and the son in college. However, all such burdens existed premaritally and were in no way exacerbated by the marriage. In fact, while it lasted, the marriage substantially relieved her financial burden. The evidence shows, with the exception of $2,000 spent for her own clothes, Wife spent her entire salary on her children. All of this temporary financial relief was at the expense of Husband. She testified at length about what she spent in the marriage ($2,000) on the theory that everything she spent should be reimbursed, all without regard for Husband's expenditures. Incredibly, she also asked the court to reimburse her for the furnishings she gave to her children. This makes no more sense than asking Husband to reimburse the thousands of dollars she gave her children during marriage. This approach is contrary to 12 O.S.1976 Supp. § 1278 which mandates accounting only for "[u]ndisposed of . . . ." separate property.

■ In our view support alimony should not be awarded at all, unless the underlying basis for the award has some rational connection to the marriage itself.[8] For example, the fact that a husband has more assets

---

**8.** The following cases reflect the myriad of criteria the supreme court has approved as circumstances the court can consider in awarding alimony: (1) the wife's loss of the right of inheritance from the husband, *Harden v. Harden*, 182 Okl. 364, 77 P.2d 721 (1938); (2) the expectation of a future inheritance of the husband, *Mathews v. Mathews*, 186 Okl. 245, 96 P.2d 1054 (1939); (3) the husband's future earning capacity, *Jupe v. Jupe*, 198 Okl. 100, 175 P.2d 976 (1947); (4) the husband's present ability to pay, *Jupe v. Jupe, supra*; (5) the wife's contribution to the husband's accumulation, *DeRoin v. DeRoin*, 198 Okl. 430, 179 P.2d 685 (1947); (6) whether the marriage was one of affection or convenience, *Dobry v. Dobry*, 203 Okl. 327, 220 P.2d 698 (1950); (7) the earning capacity of the husband, *Funk v. Funk*, Okl., 319 P.2d 599 (1957); (8) the wife's condition and means, *Eisenreich v. Eisenreich*, Okl., 323 P.2d 723 (1958); (9) duration of the married life and the ages of the parties, *Hughes v. Hughes*, Okl., 363 P.2d 155 (1961); (10) the wife's health, *Henley v. Henley*, Okl., 428 P.2d 258 (1967); (11) any future increase in the value of land, *Johnston v. Johnston*, Okl., 440 P.2d 694 (1968); (12) the wife's opportunity for employment, *Fitzer v. Fitzer*, Okl., 460 P.2d 888

or earning capacity is not a "basis" for an alimony award. It is merely a predicatory circumstance which must be found to exist to support an award. Since "fault" has been excised from §§ 1276 and 1278 as a basis for alimony, a wife's need has become the primary, if not the sole criterion as a basis for an alimony award. We hold that need must also be rationally connected to the marriage itself. If the "need" arises out of or is aggravated by the marriage itself or some event connected to the marriage; i.e., illness, postponement of education, or any other cause rationally connected to the marriage, then it qualifies as a "basis" on which alimony should be properly granted where the circumstances of the parties otherwise justify an award of alimony.

Divorce courts are not designed nor intended to resolve long-term personal or financial problems which are not rationally connected to the marriage itself. Any judge who assumes the burden to personally resolve such extramarital problems at the unfair expense of the other spouse does not do justice. Indeed, the result of such misguided judicial philanthropy ignores the letter and spirit of legislative intent and ultimately tends to pervert the institution of marriage; it especially discourages remarriage of wiser and older prospective participants who have more than modest means. After this legal ordeal, we surmise it is doubtful Husband will seriously consider marrying again, regardless of his needs for companionship.

Judgment is reversed and modified in accordance with this opinion, affirmed as to the granting of the divorce only and remanded to trial court with instructions to enter judgment accordingly. Each party shall bear their own costs of appeal, including attorney fees.

BACON, P. J., and BRIGHTMIRE, J., concur.

(1969); (13) the wife's ability to obtain gainful employment, *Kennedy v. Kennedy*, Okl., 461 P.2d 614 (1969); (14) the mode of living to which the wife had become accustomed during the marriage, *Dowdell v. Dowdell*, Okl., 463 P.2d 948 (1969); (15) the probability of the husband's ability to progress financially, *Conrad v. Conrad*, Okl., 471 P.2d 892 (1969); (16) the earning capacity of the wife, *Conrad v. Conrad, supra*; (17) the wife's ability to make a living before the marriage, *Conrad v. Conrad, supra*; (18) the conduct of the parties, *Kirkland v. Kirkland*, Okl., 488 P.2d 1222 (1971);

(19) the wife's education, *Kirkland v. Kirkland, supra*; (20) the age of the children and the need to maintain a home for them, *Price v. Price*, Okl., 484 P.2d 532 (1971); (21) the parties' station in life before the divorce, *Herndon v. Herndon*, Okl., 503 P.2d 545 (1972). As best we can discern, these circumstances, though instructive and still useful, do not always speak to the more fundamental issue of whether a rational basis for alimony has been established. This is particularly true now, since the 1976 amendments to §§ 1276, 1278 were made, deleting "fault" as a basis for alimony awards.